## LATSHAW *v.* THE STATE, EX REL. LATSHAW.

[No. 18,809. Filed February 19, 1901.]

CONSTITUTIONAL LAW.—*Bill of Rights.—Husband and Wife.—Fraudulent Marriages.—Action.—Costs.*—The act of 1895 (Acts 1895 p. 167), defining fraudulent marriages, providing for the bringing of actions therefor, and exempting the wife, who is made relatrix, from liability for costs, where her property does not exceed $600 in value, is not violative of §23 of the Bill of Rights, which provides that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which upon the same terms shall not equally belong to all citizens." *pp. 196-198.*

SAME.—*Bill of Rights.—Fraudulent Marriages.—Amount of Recovery.—Husband and Wife.*—The act of 1895 (Acts 1895 p. 167), relative to fraudulent marriages is not antagonistic to §16 of the Bill of Rights, which forbids excessive fines and cruel and unusual punishment, because of its failure to limit the maximum amount of recovery in such case. *pp. 198-200.*

ACTIONS.—*Fraudulent Marriages.—Bastards.*—Prosecutions under the act of 1895 (Acts 1895 p. 167), prohibiting fraudulent marriages as therein defined are not criminal, but civil actions in like manner as are prosecutions for bastardy. *pp. 200, 201.*

CONSTITUTIONAL LAW.—*Bill of Rights.—Jeopardy.—Fraudulent Marriages.*—The act of 1895 (Acts 1895 p. 167), defining fraudulent marriages, and providing the manner of bringing actions therefor, is not violative of §14 of the Bill of Rights, which declares that "no person shall be put in jeopardy twice for the same offense," since the legislature may provide for the recovery of damages in a civil action where the injury is caused by an illegal act, although such act may subject the defendant to a criminal prosecution. *p. 201.*

MARRIAGE.—*Fraud.—Action.—Complaint.—Husband and Wife.*—A complaint against a husband for fraudulent marriage under the act of 1895 (Acts 1895 p. 167), which substantially follows the language of the statute is sufficient. *pp. 201-203.*

SAME.—*Fraud.—Action.—Complaint.—Husband and Wife.*—A complaint under the act of 1895 (Acts 1895 p. 167), charging that defendant, who was under prosecution for bastardy, fraudulently entered

Latshaw v. State, ex rel.

into a marriage with the relatrix, with intent to escape prosecution, is not bad for failing to state the specific facts constituting the fraud.  *pp. 202, 203.*

MARRIAGE.—*Fraud.—Action.—Complaint.—Husband and Wife.*—A complaint under the act of 1895 (Acts 1895 p. 167) for fraudulent marriage is not bad for failing to show that the relatrix had been either seduced or was the mother of a bastard child, where it is alleged that she was then pregnant with a bastard child.  *pp. 203, 204.*

SAME.—*Fraud.—Complaint.—Husband and Wife.*—A complaint under the act of 1895 (Acts 1895 p. 167), is not bad because it charges that defendant fraudulently entered into the marriage with intent to escape a criminal prosecution, where the particular prosecution which the defendant desired to avoid, as charged in the complaint, was bastardy, since the characterization thereof by the pleader was merely a misnomer and did not vitiate the complaint.  *pp. 203, 204.*

SAME.—*Fraud.—Practice.*—In prosecutions for fraudulent marriages under the act of 1895 (Acts 1895 p. 167), it is the duty of the court to fix the amount of recovery.  *pp. 204, 205.*

APPEAL AND ERROR.—*Variance.—Complaint.—Evidence.*—Where, in a prosecution for fraudulent marriage, the complaint charged that defendant entered into the marriage in question to avoid criminal prosecution, and the evidence showed that he entered into such marriage to escape a bastardy prosecution, such variance should have been presented to the trial court, under §394 Burns 1894, and cannot be presented for the first time on appeal.  *p. 205.*

MARRIAGE.—*Fraud.—Instructions.*—In an action under the act of 1895 (Acts 1895 p. 167) the court erred in instructing the jury, after summing up a series of issuable facts, in effect, that if they found such facts to be true they might infer or conclude that the marriage in dispute was fraudulent upon the part of defendant, and had been entered into by him to avoid the consequences of a bastardy prosecution, and their verdict should be for plaintiff, since such inference or conclusion was not a question of law, but one of fact, wholly for the determination of the jury.  *pp. 205, 206.*

APPEAL AND ERROR.—*Harmless Error.—Practice.*—Where it affirmatively appears from the evidence to the satisfaction of the Supreme Court that the merits of the cause have been fairly tried and determined, the court will not disturb the judgment on account of intermediate errors, such as giving or refusing instructions.  *p. 206.*

From the Madison Circuit Court.    *Reversed.*

*W. A. Kittinger, E. D. Reardon* and *W. S. Diven,* for appellant.

*D. W. Scanlon, E. B. Goodykoontz, G. M. Ballard, B. H. Campbell, W. L. Taylor,* Attorney-General, and *Merrill Moores,* for appellee.

Latshaw *v.* State, *ex rel.*

JORDAN, J.—This action was instituted before a justice of the peace by the State of Indiana on the relation of Anna L. Latshaw, under the provision of a statute approved March 8, 1895, Acts 1895, p. 167. Appellant was recognized by the justice to appear before the Madison Circuit Court wherein there was a trial by jury and verdict returned against him whereby the jury assessed the damages at $600. Over appellant's motion for a new trial judgment was rendered by the court upon the verdict of the jury. The errors assigned relate to the decisions of the court in overruling a demurrer to the complaint and in denying the motion for a new trial.

The act of 1895, *supra,* upon which this action is based is entitled: "An act defining fraudulent marriages, providing for the bringing of actions therefor", etc. The first, second, and fourth sections of this statute read as follows: "Section 1. Be it enacted by the General Assembly of the State of Indiana, That any male person who being at the time under or liable to a prosecution, either civil or criminal, for seduction or bastardy, fraudulently enters into a marriage with the female who has been seduced or who is the mother of the bastard child, with the intent thereby to escape or avoid such prosecution or the consequences thereof, and who within two years after such marriage, without just cause, shall abandon his wife, or who shall, within such time, cruelly and inhumanly mistreat such wife, or fail and neglect to make reasonable provision for her support, shall be liable to an action for the recovery of a penalty which shall in no case be less than $200. Section 2. Such action shall be instituted in the name of the State of Indiana on the relation of the wife, but such wife shall not be liable for the costs of the action, as are relators in other cases, except that she have property of a value exceeding $600." "Section 4. The action may be commenced before any justice of the peace or in any circuit court of the State (where the defend-

Latshaw *v.* State, *ex rel.*

ant may be at the time such action is commenced), and the process shall be a warrant, and the practice in such cases as to the execution of bond, examination by the justice, commitment of the defendant for failure to give bond, trial, judgment, commitment for non-payment or failure to secure the judgment, execution, and as to all other matters shall be governed by the laws now in force governing prosecutions for bastardy." The constitutionality of this law is assailed by appellant on the grounds (1) that it is unreasonable class legislation; (2) that it permits cruel and unusual punishment, and (3) that it authorizes punishment twice for the same offense. It is insisted that the law is such a specimen of class legislation as renders it violative of section 23 of the Bill of Rights, which provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." It will be seen that section two of the act in controversy, after exempting the wife, who is made relatrix, from liability for costs, limits, by an exception thereto, such non-liability to those having property not in excess of $600. This it is insisted is such an unwarranted classification by the legislature as will vitiate the act. The question with respect to the liability or non-liability of parties to an action for costs is, as a general proposition, a matter within the discretion of the legislative department. In this State, at least, the right to recover costs, or the liability to pay same, in any action, depends entirely upon legislative authority. It is difficult to discover wherein the exception in question violates the above section of our Bill of Rights. The power of the legislature to exempt persons who sue or defend *in forma pauperis,* from liability for costs, is no longer a controverted question. In fact, our statutes contain many other discriminations in favor of the rights of laborers and mechanics whereby they are given liens on property to the exclusion of other persons. Nevertheless, such laws, as a general rule, have never

been considered an unwarranted or unreasonable classification or discrimination upon the part of the legislative department. The exemption from costs, under the statute in question, applies alike to all wives who become relators and who are in the same situation in respect to the amount of property as therein fixed. By §602 Burns 1894, all relators, except a state officer, or prosecuting attorney, are made liable for costs. It was certainly within the province of the legislature to declare that all relators in prosecutions instituted under the statute of 1895, *supra,* should not be subject to the provisions of the above section of the civil code, but that body, however, did not deem it proper to extend the exemption to this extent, but limited it to all such wives, as relators, who did not own property of the value of $600. All having property beyond that value do not come within the exception. This we think was fully within the power of the legislature. The immunity from costs was extended alike to all relators in prosecutions under the act upon the same terms, or, in other words, to all who did not own property in excess of the amount fixed. In no respect, in our opinion, does the exception appear to be violative of §23 of the Bill of Rights. See, *Akling* v. *St. Louis, etc., Co.* (Tenn.), 46 S. W. 24; *Jones* v. *Wisner,* 105 Mich. 664, 63 N. W. 976; *Paducah Hotel Co.* v. *Long,* 92 Ky. 278, 17 S. W. 853; *Warren* v. *Sohn,* 112 Ind. 213; *Taggart* v. *Claypool,* 145 Ind. 590; Cooley's Const. Lim. (6th ed.) 479.

The next contention is that because the statute does not limit the maximum recovery, it therefore opens the way to what might result in cruel and unusual punishment, by the court assessing and rendering judgment for a large sum of money in favor of the plaintiff, and for this reason it is claimed that the law is antagonistic to §16 of the Bill of Rights, which forbids excessive fines and cruel and unusual punishment, etc. This court, prior to the enactment of this statute, acting upon the doctrine of the common law, that a child born after the marriage of its parents was legitimate,

although begotten before such marriage, had held that in such cases the marriage of the parents was a bar to a prosecution against the father for bastardy regardless of the motive or intent whether good or evil upon the part of the parents, or either of them, which led up to or induced the marriage. *Doyle* v. *State,* 61 Ind. 324; *Moran* v. *State,* 73 Ind. 208; *Brock* v. *State,* 85 Ind. 397. Under our statute a child which is begotten and born out of lawful wedlock is declared to be legitimate, where a man marries its mother and acknowledges such child as his own. §2631 Burns 1894, §2476 Horner 1897; *Binns* v. *Dazey,* 147 Ind. 536.

In *State* v. *Otis,* 135 Ind. 267, 21 L. R. A. 733, it is held that where the female seduced subsequently marries her seducer, that during the continuance of such marriage he cannot be successfully prosecuted upon the charge of criminal seduction. Such was the law as declared by the highest court of this State prior to the passage of the statute in controversy; therefore, where a man, under the promise of marriage, had seduced a female under the age of twenty-one years, of good repute for chastity, or was the putative father of an illegitimate child, as the case might be, when confronted with a prosecution in either case, frequently for the sole purpose of escaping or avoiding the consequences of such prosecution, would marry his victim, and immediately thereafter abandon or leave her in the unfortunate condition in which she had been placed as a consequence of his wrong. It was to remedy this evil or mischief, and thereby prevent the seducer of a chaste young woman or the father of an illegitimate child from securing immunity from the consequences of a prosecution for criminal seduction, or bastardy, through means of a fraudulent marriage upon his part, that induced the legislature to interpose and enact the statute in question. The act is of a like character or nature as the statute which authorizes prosecutions for bastardy, and is not intended to be punitive but is wholly remedial, and although the word "penalty" is employed

therein, the recovery provided for is intended as nothing more than an indemnity for the benefit ·of both the mother and the child, in the event there be a child, otherwise the amount awarded inures to the benefit of the deserted wife. The fact that the word "penalty" is used in the statute, in referring to the recovery, does not make the latter a penalty when it is so fully disclosed by the general scope of the act that it was not so intended. It is expressly declared therein that the ·practice in prosecutions thereunder shall be governed by the laws in force in relation to prosecutions for bastardy. At least the provisions of such laws are to control, so far as practicable, in the absence of any provision in the statute itself to the contrary. Section fifteen of the law in respect to bastardy proceedings, §1004 Burns 1894, does not prescribe a minimum or maximum amount which the court is authorized to assess for the maintenance and education of the child, but the amount to be fixed is, under the circumstances in each particular case, left by the legislature to the sound discretion of the circuit court, subject to review upon appeal to a higher court. *Medler* v. *State,* 26 Ind. 171; *Reeves* v. *State,* 37 Ind. 441; *Scott* v. *State,* 102 Ind. 277. This provision of the statute last mentioned has never, to our knowledge, been assailed upon the ground that it did not expressly prescribe the limit beyond which the court could not go in assessing the amount of money to be paid by the putative father. So under the statute in this case, while the minimum amount is limited to $200, the maximum amount that may be fixed rests, under the circumstances in each case, within the sound discretion of the trial court, subject, however, to review and correction on appeal to a higher court.

The contention that the act in question opens a way to what might result in a double punishment for the same wrong, and thereby violates section 14 of the Bill of Rights, which declares that "no person shall be put in jeopardy twice for the same offense" is without merit. As previously

said, the statute was not intended to be punitive by award-
ing smart-money or exemplary damages against the, de-
fendant. Its sole purpose is to create a liability for com-
pensatory damages. Prosecutions thereunder are not crim-
inal, but civil actions in like manner as are prosecutions for
bastardy. §995 Burns 1894, §983 Horner 1897; *Rey-
nolds* v. *State*, 115 Ind. 421, and cases there cited. ·

The rule is well settled that the legislature may provide
for the recovery of damages in a civil action where the
injury is caused by an illegal act, although the same act
may subject the defendant to a criminal prosecution. *State*
v. *Stevens*, 103 Ind. 55, 53 Am. Rep. 482; *State* v. *Schoon-
over*, 135 Ind. 526, 21 L. R. A. 767; *Burgh* v. *State*, 108
Ind. 132. The législature having such power unfettered
by the Constitution, it is within its discretion either to limit
the amount of damages to be recovered or leave that question
to be determined by the court upon the trial. It follows,
and we so conclude, that the statute in dispute is a valid
exercise of legislative power and is not open to the objec-
tions urged by counsel for appellant.

It is next insisted that the complaint is not sufficient to
withstand a demurrer. It, omitting the caption, reads as
follows: "Anna L. Latshaw being duly sworn upon her
oath says that on the 4th day of March, 1897, at and in
the county of Madison and State of Indiana, one George
Latshaw, a male person who was then and there under a
prosecution for bastardy preferred by Anna L. McCune,
did then and there fraudulently enter into a marriage with
the said Anna L. McCune, a female, with intent to escape
criminal prosecution, who was then and there pregnant
with a bastard child by the said George Latshaw, and the
said George Latshaw did then and there unlawfully abandon
his wife, Anna L. Latshaw, within two years of said mar-
riage, to wit, on the 4th day of March, 1898, without just
cause. [Signed]    Anna L. Latshaw.    Subscribed and
sworn to," etc.

The contentions are that the pleading is bad for the following reasons: (1) That it does not show that the relatrix had been either seduced or was the mother of a bastard child; (2) because it charges that the defendant was under a prosecution for bastardy, and that he entered into the fraudulent marriage to escape a criminal prosecution without disclosing what kind of a criminal prosecution he attempted to avoid, and (3) that the complaint is deficient because it alleges only that the defendant fraudulently entered into the marriage without stating the specific facts constituting the fraud. The proceedings and liability provided for in this case are wholly statutory, as, aside from the statute, an action under the facts could not be sustained, hence, under the well settled rule, the facts averred in the complaint must at least substantially be sufficient to bring the case within the purview of the statute and entitle the complaining party to the remedy therein provided. *Arnold* v. *Arnold,* 140 Ind. 199.

The facts charged in the complaint are substantially in the language employed by the statute, and embrace such as the latter prescribes to be essential to create the liability or cause of action. No rule is better settled in this State than that which regards as sufficient an indictment or affidavit in a criminal prosecution which charges the offense in the language of the statute by which it is defined. We perceive no sufficient reason why a stricter rule of pleading should be applied to a civil proceeding like the one at bar to enforce a statutory liability, than that which is required in a criminal action. To test the complaint in question in order to determine whether it states a cause of action, we must look to the statute creating the remedy, and not to the rules under the code which control pleadings in actions of common law origin. The term or epithet "fraudulently" employed in the act to characterize the action of the man in entering into the marriage with the seduced female or the mother of a bastard child, has a well defined meaning, and certainly

there is no sufficient reason for requiring a complaint there-
under to be more specific in stating the cause of action than
the legislature has been in defining it, but the same general
terms or epithets used in the act, in our opinion, ought to
be, and are, sufficient. The charge of fraud as made by the
complaint constituted an issuable fact, and the averments
in relation thereto, in connection with the other facts al-
leged, fully apprised the defendant in regard to what he
was required to meet.

It is also insisted that the complaint is bad because it
charges that the defendant "fraudulently" entered into the
marriage with intent to escape a criminal prosecution. The
statute, as will be observed, specifies either a civil or crim-
inal prosecution for seduction or bastardy. It is evident
under the facts alleged that the particular prosecution which
the defendant desired to avoid by means of the marriage
was that of bastardy, which as the complaint discloses had
been instituted at the time of the marriage. Such prosecu-
tion the pleader seems from misapprehension or inadvert-
ence to have considered as criminal in its character and so
termed it in the complaint. This may be said, however, to be
merely a misnomer and therefore does not vitiate the com-
plaint, as under the facts therein the mistake so made may
be corrected by construction. Of course it would have been
better had the complaint shown by proper averments that
the defendant intended by fraudulently entering into a
marriage with the relatrix to escape the prosecution for
bastardy, which, as it appears, was then pending against
him. It is earnestly insisted by counsel for the appellant
that the complaint in another respect does not bring the case
within the provisions of the statute, for the reason that it
does not disclose that the relatrix at the time of the marriage
had been seduced by the defendant or was the mother of a
bastard child of which he was the father. The pleading
does, however, allege that she was "then and there preg-
nant with a bastard child by the said George Latshaw." It

is true that the statute in question employs the language "who is the mother of the bastard child." It may be conceded that the word "mother" ordinarily means a woman who has borne a child, but still such is not the sense or meaning in which the word is used in the statute in question. The latter, as we have said, is remedial, and the terms or language employed therein should receive a liberal interpretation. Certainly the legislature did not intend to limit the remedy provided only to a woman who at the time of the marriage to the putative father had been actually delivered of a bastard child, to the exclusion of one who was pregnant with such a child. We cannot attribute such an intention to the legislature. The act under consideration specifies any male person, etc., "under or liable to a prosecution * * * for bastardy," etc. Such liability arises under the bastardy law where the female is either pregnant with or has been delivered of a bastard child. When the term "mother" is construed with the provision in the same section in which it occurs, and also in connection with the provisions of the bastardy act creating the liability, it is made evident that the word in question must be held to mean an unmarried woman who has either been delivered of or is pregnant with a bastard child. In fact a woman may be said to be the mother of the child begotten from the beginning of the period of gestation. To interpret the meaning of the word as contended by appellant would defeat the intent of the legislature. Words in a statute will not be construed in their ordinary or usual sense when such construction will defeat the legislative intent. *Massey* v. *Dunlap*, 146 Ind. 350, 358. A matter or thing within the intent of the makers of the law is the same in effect as though it were within the express letter. *Conn* v. *Board, etc.*, 151 Ind. 517, 525. While the complaint can not be commended as a model pleading, still, in our opinion, it is sufficient to withstand a demurrer.

The trial court under its instructions submitted the as-

sessment of damages to the jury.  In this respect the court erred.  The statute in controversy, as we have previously seen, provides that the practice in actions thereunder as to certain specified things, and generally, in regard to all other matters, shall be governed by the laws governing prosecutions for bastardy.  By the provisions of section 15 of the bastardy act, §1004 Burns 1894, §992 Horner 1897, the right to fix the amount which the defendant ought to pay is lodged in the court, and not in the jury.  This provision, so far as practicable, must control in prosecutions under the law involved.

It is next insisted that the evidence does not support the complaint, as it fails to establish that the defendant entered into the marriage in question to escape a criminal prosecution.  The proof, however, shows that appellant entered into the marriage as charged in the complaint to escape the bastardy prosecution which was already pending.  If he considered that there was a material variance between the allegations of the complaint and the proof upon the trial, §130 of the civil code, §394 Burns 1894, §391 Horner 1897, afforded a remedy.  That section reads in part: "Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must be shown in what respect he has been misled; and, thereupon, the court may order the pleading to be amended on such terms as may be just."  Appellant having failed to present the question of alleged variance to the trial court as provided by the above section of the code, the objection urged can not be made for the first time on appeal.  *Krewson v. Cloud*, 45 Ind. 273; *Evansville, etc., R. Co. v. Maddux*, 134 Ind. 571; *Browning v. Smith*, 139 Ind. 280.  See, also, cases collected in foot-notes, 2 Woollen's Trial Proc., p. 727.

Appellant contends that the court erred in giving certain instructions on its own motion, and at the instance of plaintiff, and in refusing others over his request.  This conten-

tion must be sustained, at least in respect to instruction number one given at the request of plaintiff. The vice of this particular charge is that the court, after summing up a series of issuable facts, advised the jury, in effect, that if they found such facts to be true they might infer or conclude that the marriage in dispute was fraudulent upon the part of the defendant, and had been entered into by him to avoid the consequences of a bastardy prosecution, and that their verdict should be for the plaintiff. Such an inference, or conclusion, was not a question of law, but one of fact wholly for the determination of the jury, and the court in giving the instruction in question invaded their province. *Abbitt* v. *Lake Erie, etc., R. Co.*, 150 Ind. 498, and authorities there cited.

We have examined the evidence and it clearly and beyond controversy, we think, establishes all of the material facts alleged in the complaint. In truth, appellant introduced no opposing evidence to that introduced upon the trial by the appellee. The only evidence which was introduced in his behalf was that of one witness who testified merely in relation to his financial ability. It affirmatively appearing from the evidence to our satisfaction that the merits of the cause have been fairly tried and determined, therefore, under the well settled rule declared and recognized by the statute governing appeals to this court, §670 Burns 1894, §658 Horner 1897, we would not be justified in disturbing the judgment on account of intermediate errors such as giving or refusing instructions. Elliott's App. Proc. §643, and cases there cited. Ewbank's Manual §254.

For the error of the lower court in submitting the assessment of damages to the jury, the judgment is reversed, and the cause remanded to that court with instructions to vacate and disregard so much of the verdict of the jury as applies to the assessment of damages, and with the further order to said court to assess the damages, under the evidence, and to render judgment for the amount assessed in accordance with the provisions of the statute.