BRADLEY v. THE STATE.

[No. 20,650. Filed October 26, 1905.]

1. LARCENY.—*Bailment.—Intent.—Evidence.*—Where defendant,
with the felonious intent of getting possession of a horse and
of converting same to his own use, hired such horse, giving a
chattel mortgage on property which he did not own, and mis-
represented the purpose for which such horse should be used,
and afterwards converted such horse to his own use, fled from
the country and went under an assumed name, he is guilty of
larceny. *Lee* v. *State*, 156 Ind. 541, followed. *Stillwell* v. *State*,
155 Ind. 552, distinguished. p. 398.

2. SAME.—*Indictment and Information.—Evidence.—Variance.—
How Questioned.*—Where the indictment charged the larceny of
one "brown mare with white face and feet," and the evidence
failed to show that she had either white face or white feet, but
no objection was made in the trial court on account of such
variance, and it was not made a ground for a new trial, it will
not be considered on appeal. p. 402.

From Jackson Circuit Court; *John M. Lewis,* Judge.

Prosecution by the State of Indiana against Edward Bradley for grand larceny. From a judgment of conviction, defendant appeals. *Affirmed.*

*D. A. Kochenour,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, L. G. Rothschild* and *W. C. Geake,* for the State.

JORDAN, J.—Appellant was charged in the lower court with the crime of grand larceny committed at Jackson county, Indiana, on February 28, 1905, by then and there feloniously stealing a certain mare, of the value of $50, of the personal goods of William E. Grigsby. Upon his plea of not guilty he was tried by the court and found guilty of the offense as charged, and over his motion for a new trial, assigning only the statutory grounds, judgment was rendered sentencing him to be fined, disfranchised and imprisoned in the state prison under the indeterminate sentence law. From this judgment he appeals to this court, and has assigned that the trial court erred in denying his motion for a new trial.

Appellant's counsel contends that the evidence is wholly insufficient to sustain the conviction. No evidence was offered by appellant in his own behalf. That which

1. was introduced by the State goes to establish that appellant on February 28, 1905, went to the home of Grigsby, the prosecuting witness, a colored man and a farmer residing near the town of Crothersville, and stated to Grigsby that he wanted to hire a horse. Grigsby was unacquainted with appellant, who appears at that time to have been a resident of Jennings county, Indiana. Previously to his coming to see Grigsby he went to see Dr. W. H. Warner, a druggist of Crothersville, and informed him that he was very much in need of a horse to use for a few days, or a week, in driving about the vicinity of Seymour, for the purpose of collecting bills for a Mr. Russell, a retail gro-

ceryman. He stated to the doctor that he could not secure a horse in his own neighborhood, and Dr. Warner referred him to Grigsby, the owner of the horse in question. Appellant said he would give a mortgage on a buggy which he represented that he owned, and which he said was at Seymour at that time. He claimed to Dr. Warner that the buggy belonged to him, and that he would execute a mortgage thereon to secure the money for the hire of the horse and the return thereof. It appears that before going to see Grigsby he executed a chattel mortgage on the buggy in question to Grigsby to secure a note for $7.50, which represented the hire of the horse for fifteen days, that being the amount which it appears Dr. Warner told him Grigsby would charge him for the use of the horse for that length of time. He then went to see Grigsby, taking the mortgage and note with him, and represented to Grigsby that he was in need of a horse to drive around the country to sell certain medicine for the cure of consumption. He presented the note and mortgage in question to Grigsby, which was to secure the money for the hire of the horse, and by this means obtained the ·possession of the horse from Grigsby, to be used by him for a period of fifteen days for the purpose which he represented, and within that period he was to return the horse to Grigsby. As a part of the arrangement with Grigsby in regard to hiring the horse he agreed to report to Grigsby once every week. He took the horse away with him, made no report whatever, and Grigsby thereafter never saw the horse or heard anything in regard to the animal. There is evidence to show that appellant upon securing the mare subsequently disposed of her and absolutely converted her to his own use. She was of the value of $50, and her possession was secured by appellant from her owner, as hereinbefore shown, at Jackson county, Indiana. Grigsby testified at the trial that he did not part with her, nor had he any intention of parting with the title to the mare, and had no knowledge whatever as to her "whereabouts" or what

had become of her. The evidence shows that appellant misrepresented the fact that he was the owner of the buggy upon which he placed the mortgage in question. He was not the owner thereof, and his representation that he had been employed by Russell to collect bills was false, and the evidence shows he did not intend to use the horse for that purpose.

Dr. Warner upon the trial testified that in the conversation which he had with appellant he was in no manner repsenting Grigsby, the owner of the mare, nor was he acting as his agent. He appears to have drafted the mortgage and note in controversy, which appellant, as it appears, delivered to Grigsby to secure the hire of the mare. In doing so the doctor testified he was merely accommodating appellant. After the latter obtained the possession of the mare, as herein shown, he did not return to Crothersville, and appears to have gone to Remington, a town in the northern part of this State, at which place, about five weeks after the time he came into possession of the mare, he was arrested on the charge in controversy by Harry Rodenberg, an officer. He voluntarily admitted to this officer after his arrest that he did not have possession of the mare very long, and in the same conversation he said he could not tell where she was, or what had been done with her, but that "other parties" had the animal. On being questioned by the officer in respect to these "other parties" appellant would not state who they were. He claimed, however, that the mare had been taken from him in "broad daylight," and that when he became conscious that she had been taken he left the road upon which he was traveling, kept out of the way of all persons until night, and then walked all night. The officer said to him that he at least might tell where he had left the animal. In response to this request he said that to tell might not do him any good. He admitted that, after going to Remington, he went under the name of Wilson, instead of his true name, for the reason that he did not want any person to know where he was, because if his "whereabouts" became known he

would be called upon to give an account about the mare. He further stated to the officer in question that it was his purpose "to keep out of the way long enough" until he could make sufficient money to pay for the mare, and he then intended to return, as he supposed everything would be all right.

There are no explanatory circumstances or reasons in this case tending to show an absence of felonious intent on the part of appellant wholly to deprive the owner of the property in controversy at the time he obtained the possession thereof; but, upon the contrary, the evidence in the case certainly justifies the inference that at that time he entertained the felonious intent not to return the property, but wholly to appropriate or convert it to his own use, which, as there is evidence to show, he subsequently did without the consent or knowledge of the owner. This, under the authorities, constituted the crime of larceny as completely as though the property in dispute had been taken without the knowledge or consent of its owner. It is apparent under all of the circumstances that the transaction of hiring the mare on the part of appellant was merely resorted to with the felonious intent of obtaining possession of her, in order that he might thereby wholly appropriate her to his own use and absolutely deprive her owner of his property. *Grunson* v. *State* (1883), 89 Ind. 533, 46 Am. Rep. 178; *Fleming* v. *State* (1894), 136 Ind. 149; *March* v. *State* (1889), 117 Ind. 547. That the evidence in the case affords this court no grounds for disturbing the judgment of the trial court is fully affirmed and settled by the decision of this court in *Lee* v. *State* (1901), 156 Ind. 541.

Appellant's counsel insists that *Stillwell* v. *State* (1900), 155 Ind. 552, is on a parallel with the case at bar. In this insistence counsel is mistaken, for the facts in that appeal may be said to be virtually the reverse of those in this case.

It is lastly insisted that there is a fatal variance between the evidence and the description of the stolen property, as

alleged in the pleading. The subject of the larceny

2. is described in the affidavit as "one brown mare with white face and feet." It is claimed that, although this description is unnecessarily specific, nevertheless, under the authorities, it must be proved as alleged; citing *Morgan v. State* (1878), 61 Ind. 447. It is argued that there is no evidence to prove that the mare in question had a white face, or that her feet were white. Conceding that this insistence is true, nevertheless the question of variance which appellant seeks to raise can not properly be considered in this appeal, as, for aught appearing in the record to the contrary, it is presented for the first time in this court. If appellant believed there was a fatal variance between the averments of the affidavit and the proof in the case, he ought to have seasonably interposed his objections in this respect during the trial in the lower court, and in the event of an adverse ruling have assigned it as a reason for a new trial. *Graves* v. *State* (1889), 121 Ind. 357; *Taylor* v. *State* (1891), 130 Ind. 66; *Kruger* v. *State* (1893), 135 Ind. 573.

There is no available error in the record, and the judgment is therefore affirmed.

Montgomery, J., did not participate in this decision.