MIDLAND BUILDING INDUSTRIES, INC. *v.* OLDENKAMP ET AL.

[No. 18,225. Filed February 1, 1952. Rehearing denied March 19, 1952. Transfer denied April 10, 1952.]

348

350

*Henry M. Dowling, Addison M. Dowling* and *George Ross,* all of Indianapolis; *Donald R. Mote* and *Merl M. Wall,* both of Wabash, for appellant.

*Howard E. Plummer* and *Franklin Plummer,* both of Wabash, for appellees.

MARTIN, J.—There was a complaint filed by appellant against the appellees Hastings for foreclosure of a mechanic's (materialman's) lien against the real estate owned by appellees Hastings.

The issues in regard to the furnishing of material in question were found in favor of appellees Hastings and against the appellant as to the foreclosure of the mechanic's lien here involved. The court also found that $790 tendered by appellees Hastings and paid into court as the unpaid balance due from them to John Oldenkamp should be credited upon appellant's demand against the latter. A finding was against appellees Hastings on the cross-complaint against John Oldenkamp.

The error assigned and relied upon for reversal by the appellant is that the court overruled its motion for a new trial.

The reasons alleged in the motion for a new trial are that the decision of the court is not sustained by suffi-

cient evidence and that the decision of the court is contrary to law.

The record, when considered most favorable to the appellees and with reasonable inference against the appellant, discloses that the appellees Hastings in November, 1948, entered into a no-lien contract with one John Oldenkamp, under the terms of which he was to build a house for them on Lot Number 37 in Section "A" of Bonbrook Addition. The record shows that the appellees Hastings did not post signs on the property as required by the statute. Burns' 1942 Replacement (1949 Supp.), §43-701.

Leroy Hastings testified that after recording this contract he had a conversation with Dean Krom at the Wilkinson Lumber Company concerning materials, in which he told Krom that he had a no-lien contract with John Oldenkamp to build a house in Bonbrook Addition; that he understood from Mr. Oldenkamp that he was to buy a part of his supplies from the Wilkinson Lumber Company. He further testified that he told Mr. Krom that he would appreciate it if he would let him know if John Oldenkamp did not keep his bills paid as he understood he (Mr. Oldenkamp) did not have very much money, to which Mr. Krom answered, "You need have no fear because we have a credit arrangement with John Oldenkamp whereby if he does not pay, we shut off his credit." He said we had nothing to worry about as far as payment of the material between the lumber company and John Oldenkamp as he would take care of that. The following question was asked Mr. Krom with reference to the conversation with the Hastings: "Did they at any time say anything to you about not wanting any liens filed against the house that was being built?" Mr. Krom made the following answer: "They said they wanted to make sure that their house had no liens filed against it."

Following this date Mr. Hastings made no inquiry of the Wilkinson Lumber Company as to whether or not their account had been paid until on May 17, 1949. Hastings further testified that on November 3rd he paid Oldenkamp $500 under the contract; that he paid Oldenkamp under this contract on December 7, 1948, $2,000; on January 10, 1949, $3,000; on February 15, 1949, $3,000; on March 19, 1949, $1,000; on April 13, 1949, $2,000; on May 7, 1949, $500; totaling $12,000. He also paid him some extras, $197.97 on February 15th and $37.19 on April 4th. $790 had not been paid on the contract price.

The second and third paragraphs of appellees Hastings' answer are on the theory of estoppel, relying upon a credit arrangement which the appellant had with the contractor, John Oldenkamp. 31 C. J. S., Estoppel, §67, p. 254, reads in part as follows:

"In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice."

In the case of *Johnson* v. *Spencer* (1912), 49 Ind. App. 166, 96 N. E. 1041, it is stated as follows:

"An estoppel *in pais* arises when by the fault of one person another has been induced, ignorantly or innocently, to change his position for the worse. Its existence is determined by the acts, knowledge and conduct of both parties."

Even though a materialman relies primarily upon the credit of the contractor, he does not thereby waive,

forfeit or estop his right to a lien when he furnishes material for a building and the material is used in the building. *Clark et al.* v. *Huey et al.* (1895), 12 Ind. App. 224, 40 N. E. 152; *Johnson* v. *Spencer, supra; Kendall Lumber & Coal Co.* v. *Roman* (1950), 120 Ind. App. 368, 91 N. E. 2d 187.

The statute, by its terms, gives the lien, upon proper notice filed by materialmen for materials furnished for a building, to the extent that they are used therein. Burns' 1942 Replacement (1949 Supp.), §43-701. If the materialman furnished the materials for the building, and they are used in it, and the improvement is being made by the authority and direction of the owner, the right to the lien attaches. *Clark et al.* v. *Huey et al., supra.*

The lien is not the creature of the contract, but of the law. It is the law, and not the contract, which gives the lien. *Clark et al.* v. *Huey et al., supra; Shilling et ux.* v. *Templeton* (1879), 66 Ind. 585; *Vail et ux.* v. *Meyer* (1880), 71 Ind. 159.

It has not been the policy of the courts to require from the mechanics and materialmen more than the statute itself demands. These statutes are entitled to a liberal construction in favor of the lien-holder. *Clark et al.* v. *Huey et al., supra.*

It is our opinion that the materialman does not lose his lien simply because he furnishes the materials for the house upon the order and credit of the contractor, and not upon the credit of the house, even if this latter fact was made to appear. Where the contractor is himself, by the terms of his contract with the owner, to furnish the materials, he buys them, and, unless he pays cash, is necessarily bound for them. He is primarily and personally liable therefor to the materialman. If he fails to pay, and a lien is

taken and paid by the owner, he may deduct the amount from any sum due the contractor, or he may sue the contractor therefor if necessary. *Clark et al.* v. *Huey et al., supra.*

In the case of *Johnson* v. *Spencer, supra,* the court quoted with approval from *Clark et al.* v. *Huey et al., supra,* as follows:

" 'When the work is done on the building for the contractor of the materials furnished to him to be used in that particular building, and they are so used, the laborer or materialman is entitled to a lien upon filing the proper notice at the proper time, subject to his power to waive the lien by contract, or to estop himself from asserting it by acts which would create an estoppel in any other case; but simply furnishing the goods or doing the work on the order and credit of the contract or without any present intention of creating a lien is not a waiver nor an estoppel.' "

In 155 A. L. R., §62, p. 350, we find the following language:

"The doctrine of equitable estoppel or estoppel in pais is said to be founded upon principles of morality and fair dealing and to be intended to subserve the ends of justice. It always presupposes error on one side and fault or fraud upon the other and some consequent change of position of which it would be inequitable for the party against whom the doctrine is asserted to take advantage. The consideration upon which estoppel of this character proceeds is that the author of a misfortune shall not himself escape the consequences and cast the burden on another. Accordingly, it holds a person to a representation made or a position assumed where, otherwise, inequitable consequences would result to another who, having the right to do so, under all the circumstances of the case, has in good faith relied thereon and been misled to his injury.

"The essential elements of an equitable estoppel have been said to be as follows:

"(1) Conduct of the party estopped which amounts to a false representation or concealment

of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert;

"(2) Intention on his part that such conduct shall be acted upon by the other party, or at least expectation that it will be acted upon by him;

"(3) Knowledge on his part of the real facts;

"(4) Lack of knowledge on the part of the party claiming the estoppel and of means of knowledge of the truth as to the facts in question;

"(5) Reliance upon the conduct of the party estopped; and

"(6) Action based on such reliance of such a character as to change his position prejudicially."

The question in controversy is whether or not the acts and representations are such as to constitute the basis for estoppel. The burden of proof of such estoppel was upon appellees Hastings. The Indiana Statute requires that, in order for an owner to be free from materialmen's liens for material furnished in erection of a building on such owner's land under a no-lien contract with the contractor, the building contract must be filed in the County Recorder's office and a sign placed conspicuously upon the premises, announcing that the work is being performed under a no-lien contract. Burns' 1942 Replacement (1949 Supp.), §43-701.

The above act made it imperative that there be both a recording of the contract and the posting of the notice as prescribed by the statute. In this case there was a recording of the contract but no compliance with the posting of the sign on the property.

Mechanic's lien statutes must be strictly construed in regard to performance of designated acts whereby the owner may relieve his property from a laborer's or materialman's lien.

The appellee admits that the appellees Hastings did not comply with the statute in regard to the placing of signs on the real estate in question. The purpose of the no-lien statute was to provide the owner a way of escape by following the statutory requirements for exemption.

The substance of the conversation relied upon by the Hastings for an estoppel, according to appellees Hastings, was, that Leroy Hastings told appellant's local agent, Dean Krom, that Hastings had a no-lien contract with John Oldenkamp to build the house here involved; that Hastings would appreciate it if Krom would let him know if Oldenkamp did not keep his bills paid up; that Krom answered, "you need have no fear because we have a credit arrangement with John Oldenkamp whereby, if he does not pay, we shut off his credit." Krom further stated that Hastings had nothing to worry about as far as payment of the material between the lumber company and John Oldenkamp was concerned, that Krom would take care of that. Mrs. Hastings added to the foregoing that Krom said: "I will take care of it and will let you know." Nothing was said about appellant not filing a lien for its claim.

Assuming appellees Hastings' version of this conversation was correct, it was not sufficient to support an estoppel *in pais,* as against appellant.

There is no evidence in the record that the Hastings relied upon Krom's statements and for that reason did not place a sign upon the property in question and also for that reason were induced by said statements to make the payments to Oldenkamp. "The rule is well established that one who insists upon the acts or admissions of another working an estoppel must show that he acted upon and was influenced by such acts or ad-

missions to do some act which would result in an injury if the other is permitted to withdraw or deny the act." *Evans* v. *Odem* (1902), 30 Ind. App. 207, 212, 65 N. E. 755.

"An essential element in every estoppel is that the representation or concealment shall have been relied upon, and the conduct of the person to whom it is made thereby induced." *Fuelling* v. *Fuesse* (1909), 43 Ind. App. 441, 87 N. E. 700, 702.

Taking the Hastings' version of the evidence into consideration, they were in no way prevented by Krom's statements from protecting themselves under the no-lien statute. Under the statute, the mere fact that the materials were furnished on the credit of the contractor would not be an extinguishment, waiver or estoppel of the plaintiff's lien. Here there is no pretense of an agreement to waive, nor are there any facts which would create an estoppel.

The rule is that an estoppel must be specially pleaded, and that strictness in pleading it is essential. No intendments are made in favor of a plea of estoppel, and it is incumbent upon the pleader to fully plead all the facts essential to the existence of an estoppel. *Troyer et al.* v. *Dyar, Commissioner of Drainage* (1885), 102 Ind. 396, 399, 1 N. E. 728; *Sims* v. *The City of Frankfort et al.* (1881), 79 Ind. 446, 452; *Stewart* v. *Beck et al.* (1883), 90 Ind. 458, 459.

In so pleading and proving, the pleader must state and prove present, existing facts upon which the estoppel is supposed to rest, and not allegations as to future conditions or performances: This requirement was not here met.

The only statement here attributed to Dean Krom which related to a present existing fact was, "You need have no fear because we have a credit arrangement

with John Oldenkamp." In our opinion that statement alone was not sufficient to create an estoppel.

The other statements attributed to Dean Krom did not relate to the present, but looked wholly to the future. They pertained to shutting off Oldenkamp's credit if he did not thereafter pay his bills; that Krom "would take care of" Oldenkamp's payments for material and "would let" the Hastings know if Oldenkamp did not pay promptly. These were not assertions of present, existing facts, and therefore could not be the basis for an estoppel. *Roose* v. *McDonald* (1864), 23 Ind. 157, 161; *Mitchell et al.* v. *Fisher* (1883), 94 Ind. 108, 110.

In the case of *Roose* v. *McDonald, supra,* the court said: "The declarations and statements complained of were as to the *future* conduct of the plaintiff, and not in relation to any existing fact at the time. The matters set up are not sufficient to create an estoppel *in pais.*"

The other defense advanced by the appellees Hastings was the denial of the validity of the lien as not being filed in time. The evidence shows that the materialman's lien was dated and filed September 13, 1949. Exhibit 158, the evidence shows, was issued and delivery made on July 18, 1949, while the exhibit with the complaint shows this item as being dated June 19, 1949. Appellees having made no objection to the introduction of Exhibit 158 on the ground of variance between the date stated therein when offered in evidence and the exhibit to the complaint, such objection will be considered waived. *Taylor* v. *State* (1891), 130 Ind. 66, 69, 29 N. E. 415; *Kruger* v. *State* (1893), 135 Ind. 573, 35 N. E. 1019; *Latshaw* v. *State, ex rel.* (1901), 156 Ind. 194, 205, 59 N. E. 471; *Bradley* v. *State* (1905), 165 Ind. 397, 402, 75 N. E. 873, 875.

Aside from the correctness of August 2, 1949, as the

date on Exhibit 159, Exhibit 158 shows a date of July 18, 1949. Since appellant's lien was filed September 13, 1949, it was taken 57 days after the material, shown by Exhibit 158, was delivered and was well within the statutory period. Even if appellees' contention as to Exhibit 159 be conceded, the lien was filed within the time required by law. The evidence introduced, not the exhibit filed with the complaint, controls as to the proper date of Exhibit 158. *Lucas* v. *Smith et al.* (1873), 42 Ind. 103, 105; *Davis et al.* v. *Doherty et al.* (1879), 69 Ind. 11, 14.

As any variance between the complaint and Exhibit 158 as filed could be amended at the trial, it will, on appeal, be deemed to have been so amended. *Allen* v. *Hollingshead* (1900), 155 Ind. 178, 181, 182, 57 N. E. 917.

In our opinion the record herein leads inescapably to the conclusion that the judgment of the trial court denied appellant the relief to which it was entitled under the law, therefore, the judgment is reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Achor, J., dissenting with opinion.

## DISSENTING OPINION

ACHOR, J.—The evidence in the above case most favorable to the appellees is that on November 3, 1948 the appellees Hastings entered into a no-lien contract with one John Oldenkamp, under the terms of which the latter was to build a house for them in the city of Wabash. The record shows that the appellees Hastings recorded their no-lien contract but did not post a sign on the property as required by the no-lien statute. Burns' 1942 Replacement (1949 Supp.), §43-701.

The building materials used in the building, which are the subject of this action, were furnished by appellant. The appellants maintained a building supply business and lumber yard in the city of Wabash. Immediately prior to and during part of the time the materials were furnished by appellant, Dean Krom was employed by appellant as general manager of the business. He was appellant's only business representative in Wabash. As such manager he was responsible for "sales, collections, overseeing the yard and equipment, manager of the office and supervising the people in the office."

On November 5, 1948, immediately prior to the furnishing of any materials by appellant to Oldenkamp, the contractor, appellees Hastings and Krom, on behalf of appellant, discussed the matter of payment for materials and the filing of a lien on appellees' property, by reason of the materials furnished. The testimony as to their conversation is as follows:

A. "I went from here to Wilkinson Lumber Company, and told Dean Krom I had a no-lien contract to build a house in Bonbrook with John Oldenkamp, and I had understood from Mr. Oldenkamp that he was to buy part of his supplies from the Wilkinson Lumber Company. I told Dean Krom that I would appreciate it if he would let me know if John Oldenkamp didn't keep his bills paid up as I understood he didn't have very much money, to which Dean answered, 'You need have no fear because we have a credit arrangement with John Oldenkamp whereby if he does not pay, we shut off his credit.' "

Q. "Did he say anything further about your proceeding and giving it no further attention?"

A. "He said we had nothing to worry about as far as payment of the material between the lumber company and John Oldenkamp as he would take care of that."

A. "If he (Oldenkamp) didn't pay, would let us know."

The following question was asked Mr. Krom, with reference to the coversation with the Hastings':

Q. "Did they at any time say anything to you about not wanting any liens filed against the house that was being built?"

A. "They said they wanted to make sure that their house had no liens filed against it."

Thereafter, appellant furnished the contractor, Oldenkamp, materials for appellees' house. On December 7, 1948, appellees paid Oldenkamp $2,000.00 for labor and materials furnished pursuant to this contract. The latter part of December, while appellees were at appellant's place of business, they asked Mr. Krom, "How is everything coming with the house? Did you take care of everything?" Mr. Krom said that he did. Thereafter, between December 7, 1948 and May 17, 1949, appellees paid Oldenkamp additional sums totaling $9,500.00. On May 17, 1949, while appellees were again at appellant's place of business, appellees "remarked to Mr. Hamilton (successor to Mr. Krom as manager of appellant's business) 'has Oldenkamp taken care of his bills to date?' to which Hamilton said 'he has not paid a dollar.' "

Appellee, LeRoy Hastings, testified that "After I learned of this situation, I paid nothing further to Oldenkamp." Thereafter appellant filed the mechanic's lien which is the basis of this action.

Appellee, by way of affirmative answer, alleged the above facts in avoidance. The finding and judgment of the court was for the appellees.

Appellant's motion for a new trial asserts that the "decision" of the court was not sustained by sufficient evidence and was contrary to law. Appellant contends first that appellees' answer was neither proper in form nor sufficient in allegation of fact to constitute either a

waiver or estoppel. Appellees only contend that it contains sufficient allegation of fact to constitute estoppel.

Appellees' answer does not specifically denominate it as an answer of equitable estoppel. However, as stated in 31 C. J. S., page 449, §156:

> "The essential facts constituting estoppel or waiver must be pleaded, but it is not necessary that estoppel or waiver be specifically designated as such in the pleading."

As to appellant's contention that the allegations of fact are insufficient to constitute equitable estoppel, appellant made no objection thereto by demurrer. Therefore, the objection is deemed waived. §2-1014, Burns' 1946 Replacement; *Atkinson et al.* v. *Lindsey* (1872), 39 Ind. 296. Furthermore, there being no objection to the evidence before us, the complaint is considered amended to conform to the evidence.

Appellant contends secondly that its manager, Dean Krom, "had no authority to defeat appellant's lien by waiver, estoppel or otherwise." The authority granted agents and officers of corporations generally is stated in 13 Am. Jur., 896, §930:

> "The officers or agents of a corporation have only such power to release, settle, or compromise claims owing to the corporation as is conferred upon them expressly or impliedly, . . . The authority, however, to release or compromise corporate claims may be inferred from the manner in which the officer or agent has been permitted to conduct the business of the corporation. Upon similar principle, a corporation may be bound by its duly authorized *agent acting within the real or apparent scope of his authority, and the agent may* waive forfeitures and *estop the corporation, so as to prevent it from setting up a defense which would operate as a fraud on the other contracting parties.*" (Our italics.)

Since appellees do not contend that Krom's actions constituted a waiver, it is not necessary to ·consider his authority or lack of authority to waive his employer's right to a lien by contract, release, or any· other formal legal act. We are only required to determine whether or not, as the manager of the appellant company, he was held out by his superiors as having authority in the sale of merchandise and the collection of accounts, to limit or extend credit to such an extent as to (1) adopt a policy of shutting off the credit of a general contractor if he does not pay; (2) to assure the owner that such a policy would be continued as between the materialman, the contractor, and the owner; and (3) agree to look *solely* to the credit of the contractor for payment of materials purchased by him.

There was evidence before the court from which reasonable men might conclude that Krom had such authority or was held out by appellant as having such authority. Therefore, this court cannot say that Krom did not have authority to make the representations in evidence and to bind his principal to the consequences thereof.

Appellant contends thirdly that the facts in evidence do not support the necessary elements of equitable estoppel. Upon this subject 31 C. J. S., Estoppel, §67, p. 254 states as follows:

"In order to constitute an equitable estoppel or estoppel in pais' there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice."

The doctrine of equitable estoppel as stated, with some variance from the above statement, by this court as follows in the case of *Johnson* v. *Spencer* (1912), 49 Ind. App. 166, 96 N. E. 1041:

> "An estoppel *in pais* arises when by the *fault* of one person another has been induced, ignorantly or innocently, to change his position for the worse. Its existence is determined by the acts, knowledge and conduct of both parties." (Our italics.)

Appellant contends that there was no such "false representation of material facts" (31 C. J. S., 254, §67) or "fault" (*Johnson* v. *Spencer, supra*) on the part of appellant sufficient to constitute estoppel. Upon this issue appellant has argued and cited numerous authorities to the effect that oral notice of a no-lien contract is not sufficient (*Kendall Lumber & Coal Co.* v. *Roman* (1950), 120 Ind. App. 368, 91 N. E. 2d 187), and that reliance by the materialman "primarily upon the credit of the contractor does thereby waive, forfeit or estop his right to a lien." *Johnson* v. *Spencer, supra; Clark et al.* v. *Huey et al.* (1895), 12 Ind. App. 224, 40 N. E. 152.

The above statements of law are correct but are *not germain* to the facts before us. We do not have a circumstance where there is merely an oral notice of a no-lien contract to the materialman or where the materialman merely relies *primarily* upon the credit of the contractor. In the case before us there is evidence to support the conclusion that appellant *affirmatively committed himself* to rely *solely* upon the credit of the contractor; that "as far as payment of the material between the lumber company and Oldenkamp (was concerned) he (Krom) would take care of that." Such an affirmative representation was not present in the cases cited, and it is this representation which is the basis of estoppel in the case.

It is strongly contended further that since mechanic's lien statutes are creatures of statute and not of contract, they must be strictly construed; that mechanic's liens can only be avoided by compliance with the statute and that any estoppel in avoidance of such a lien must be related to one of the acts omitted by the owner as required by the no-lien statute; that the only failure of compliance on the part of appellee was in not posting the statutory notice on the property and that, therefore, any false representation or inducement on the part of appellant to be material in this particular case must have been such as to have prevented appellee from posting the required notice.

I do not concur in this contention. I cannot conceive that the legislature intended that the no-lien statute be used as a straight-jacket with which to shackel an innocent property owner against the "legalized rape" of an "unprincipled suitor" who, by deceit or false representations, has lured the owner into a false sense of security.

The no-lien statute merely establishes statutory measures by which mechanic's liens may be avoided. It does not presume to revoke the common law doctrine or equitable estoppel in mechanic's lien cases, as affirmed in the cases of *Clark et al.* v. *Huey et al.* (1895), 12 Ind. App. 224, 40 N. E. 152 and *Johnson* v. *Spencer, supra.*

Whether the conduct of the materialman, as related to that of the owner, was outside or partially within the veil of the no-lien statute, was not a controlling factor in this case but was only a material circumstance in determining whether or not the conduct of the materialman under all the existing circumstances was sufficient to constitute an estoppel. The trial court, on the basis of the evidence before it, found this fact favorably to

the appellees and it is not within the province of this court to disturb this finding.

It is contended further that the fault or fraud of the appellant concerned itself only with the future conduct of the appellant; that the misrepresentations were not as to existing facts and, therefore, were not sufficient to constitute an estoppel.

In order to constitute fraud, the fraudulent representation must be as to an existing fact. It is true that a fraudulent act which misleads another to his damage may be asserted in estoppel. However, equitable estoppel is not necessarily predicated upon fraud. As stated in 155 A. L. R. 350, §62:

> "The doctrine of equitable estoppel or estoppel in pais is said to be founded upon principles of morality and fair dealing and to be intended to subserve the ends of justice. It always presupposes error on one side and *fault or fraud* upon the other and some consequent change of position of which it would be inequitable for the party against whom the doctrine is asserted to take advantage . . ." (Our italics.)

And as heretofore stated in the case of *Johnson* v. *Spencer, supra:*

> "An estoppel *in pais* arises when by the *fault* of one person another has been induced, ignorantly or innocently, to change his position for the worse. Its existence is determined by the acts, knowledge and conduct of both parties." (Our italics.)

The case of *Roose* v. *McDonald* (1864), 23 Ind. 157, 161, is cited as supporting appellant's position. The statement in that case is as follows:

> ". . . The declarations and statements complained of were as to the *future* conduct of the plaintiff, and not in relation to any existing fact at the time . . ."

In the above case the court stated that representations which relate only to *future* conduct are not sufficient to constitute estoppel. However, that case, when applied to the facts in the case at bar, would seem to support a conclusion opposite to that asserted by appellant. The necessary conclusion from the statement is that although the declarations and statements are as to future conduct, if they are *related to existing facts,* they are sufficient. In the case at bar, we have a representation as to future conduct (a positive assurance of future payment from Oldenkamp or the termination of credit to him) directly related to and predicated upon (an established credit arrangement with Oldenkamp) an existing fact. The character of Krom's representations was sufficient upon this issue to constitute estoppel.

Appellant contends further that the appellees failed in their burden of proof to show that they relied upon the statements made by Krom. Upon this issue they contend first, that appellees' damage resulted from their contract with Oldenkamp, which preceded their conversation with Krom, and not from any reliance upon subsequent statements by Krom. Appellant has cited *Johnson* v. *Spencer, supra,* as supporting this contention. However, the facts in that case are entirely different on this point. Further argument upon this point seems so obviously falacious as not to justify further discussion regarding it.

Appellant also contends, upon the issue of reliance upon the representations of Krom, that there is no evidence supporting the fact of such a reliance. The record does not disclose any direct evidence upon this point. However, the court was not bound to direct evidence. He was entitled to also consider circumstantial evidence and all reasonable inferences which might be drawn therefrom.

It appears from the evidence that appellees made payment to Oldenkamp under their contract just as Krom must have inferred that they would and as he told them they could, because "as far as payment of the material between the lumber company and John Oldenkamp (was concerned) he would take care of that" and would let them know if he did not. Appellees made a payment of $2,000.00 on December 7, 1948. The evidence further discloses that the latter part of that month the appellees asked Mr. Krom: "How is everything coming on the house? Did you take care of everything?" to which "Mr. Krom said he did." As a matter of fact, Oldenkamp "had not paid a dollar" for the materials in the house at that or at any time.

In the light of the above evidence, both as to statements made by and conduct of the parties, it cannot be said that there was no evidence from which reasonable inferences might be drawn in support of the finding of the court that the appellees *relied* upon the representations made by appellant, (1) that appellant could and would look solely to Oldenkamp for payment and, (2) that appellees could make payment directly to Oldenkamp as provided in their contract, and that in doing so they "had nothing to worry about."

It would appear that the acts and representations of the appellant, as stated above, are such that upon "principles of morality and fair dealing" the ends of equity and justice were served by denying a second liability on the part of the appellees for the obligation sought to be recovered, that the doctrine of equitable estoppel was properly applied by the trial court and that its judgment should be affirmed.

NOTE.—Reported in 103 N. E. 2d 451.