VOORHEES-JONTZ LUMBER COMPANY *v.* BEZEK ET AL.

[No. 20,102. Filed July 27, 1965.]

*While Judge Martin participated in the hearing of oral argument and conference of the Judges above named, he did not participate in the adoption of this final opinion.

384

*Albert L. Doyle,* of Mishawaka, for appellant.

*Robert E. Zimmerman* and *Hahn, Zimmerman, Nafe & Fisher,* of South Bend, for appellees.

HUNTER, J.—Appellant, Voorhees-Jontz Lumber Company, filed suit in St. Joseph Superior Court to foreclose a mechanic's lien as a materialman against appellees Bezeks and C. E. Powell. Powell properly pleaded discharge in bankruptcy preventing any possibility of a judgment against him. Bezeks filed answers in denial and payment with one paragraph pleading the affirmative defense of equitable estoppel. Upon request of the appellant, the trial court entered special findings of fact and conclusions of law. Judgment was entered in favor of appellees on their plea of estoppel. Generally, the facts are as follows:

Powell, a general contractor, and appellant lumber company, through its general manager, Taelman, entered into an agreement whereby appellant would recommend the services of Powell to parties interested in construction of buildings. In return for these recommendations, Powell agreed to purchase all of his building materials from appellant. Under this arrangement, appellant's employees provided the basic cost of the materials for the building contracts to Powell. Appellant often prepared working plans for all parties con-

cerned without charge to Powell or the customer. Also, appellant's general manager, Taelman, sometimes prepared the written construction contracts for Powell and the customer. This arrangement continued for approximately six (6) years during which time Powell purchased some Three Hundred and Twenty-Three Thousand ($323,000) Dollars worth of materials for his jobs. Moneys paid to Powell were at times applied to the customer's particular materials account and sometimes to a different account, in some instances at the direction of Taelman.

Appellees Bezeks wished to construct a residence and conferred with Taelman showing him a sketch plan and also discussing two (2) building contractors that they had under consideration. Taelman discouraged the hiring of appellees' proposed contractors and stated that he could get one better, suggesting Powell. He told them that Powell was "very honest" "reliable" and "very dependable". Except for the quality of Powell's workmanship, Bezeks relied solely upon Taelman's representations and hired Powell.

Appellant then caused the plans for the building to be prepared without charge to Bezeks or Powell. Taelman also prepared the contract entered into between Powell and Bezeks. Before the execution of the contract, which occurred after construction began, neither appellant nor its employees disclosed the secret arrangement between Powell and appellant.

On certain occasions, Taelman directed payment of moneys received by Powell from the Bezeks to be applied to accounts other than the Bezeks'. At the time Taelman made the representations to Bezeks concerning Powell, said Powell was delinquent in his account with appellant. This was known to appellant and Taelman.

After the materials were furnished and complete

payment for all materials and work was made by Bezeks, Powell only paid to appellant $4,949.35 of the total material bill of $12,660.37. At this time, the total delinquency of Powell to the appellant was $32,176.69. The Bezeks' account was the only one of which the time for filing liens had not expired. Appellant thus timely filed its notice of intention to hold a mechanic's lien against Bezeks and filed suit thereon.

We are presented with several issues in appellant's assignment of error that the trial court erred in overruling appellant's motion for new trial. We will separately consider these questions.

In one argument, appellant urges that certain findings of fact are not supported by the evidence. This court must accept the ultimate facts as found by the trial court if there is evidence to sustain them. *Miller, etc.* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 665, 136 N. E. 2d 17. (citing cases) To preclude unduly burdening this opinion, suffice it to say that we have examined the controverted findings of fact and compared the evidence relative thereto and conclude that these findings are fully supported by the evidence. Appellant's argument on this point is based upon an attempt to show how the conclusions of fact are wrong by selecting one or two statements in the evidence and asserting that these particular aspects of the evidence warrant a contrary conclusion. Since we are not a trial court, we cannot weigh the evidence. We have concluded that there is ample evidence of probative value and also evidence from which reasonable inferences can be drawn therefrom to support the findings of fact and this is the extent of our authority in regard to any consideration of the evidence as it pertains to such findings. *Fidelity, etc., Co.* v. *Carroll* (1917), 186 Ind. 633, 637, 117 N. E. 858. Appellant's separate argument on the findings of

facts is based upon a rule found in *Miller, etc.* v. *Ortman, etc., et al., supra,* wherein at p. 653, it is stated that:

> "The findings as stated contained many evidentiary facts and conclusions of fact and law which are improper."

At the outset, we must state that we find no combined finding of fact and law in the controverted conclusions of fact. *Evidentiary facts* are defined as "those facts necessary to prove the essential or ultimate fact." Black's Law Dictionary. Likewise, a *conclusion of fact* is "An inference drawn from the subordinate or evidentiary facts." Black's Law Dictionary, *supra*. More particularly, evidentiary facts are "proofs and testimony", *Words & Phrases,* Vol. 15A, pp. 48-51, while ultimate facts are those that are necessary in order that a determination of the rights of parties can become a question of law. *Words & Phrases,* Vol. 43, pp. 6-9. These and many other definitions of the terms "ultimate" and "evidentiary" facts necessarily leave much to be desired because the determination as to whether a fact found is evidentiary or ultimate can only be ascertained by examining each separately.

Since the trial court's findings of fact are necessarily rather lengthy, we do not deem it necessary to quote the entire transcript of such findings herein. Appellant in fact does not dispute all of the findings. It selects parts of six (6) such findings (4, 9, 10, 13, 15 and 16) and for argument only states that a part of each particular finding is evidentiary and not an ultimate fact. The remainder of the argument on each of these is based upon the lack of, or presence of contradictory evidence which we have already considered. Upon a thorough examination of the controverted and isolated parts of the findings, we find only one where the trial court quotes Taelman (appellant's manager)

as saying to Mrs. Bezek that "We are starting excavation tomorrow." This quote would probably be considered an evidentiary finding. Nevertheless, its insertion evidently was only for the purpose of buttressing the ultimate fact found by the trial court to the effect that notice of the beginning of the actual construction was given by Taelman and not Powell.

We find support for our decision on this question in the body of law concerning appellate review of findings of fact. The Indiana Supreme Court has early recognized that there must be shown *prejudicial* error by the appellant in the findings of fact to warrant reversal on such findings on appeal. *Douthit et al.* v. *Douthit* (1892), 133 Ind. 26, 28, 32 N. E. 715. As stated by this court in *Baker* v *Johnson* (1922), 79 Ind. App. 413, 418, 419, 138 N. E. 780: " . . . errors in the special findings of facts, however, are not available to appellant, unless it appears that they led to a conclusion of law adverse to him, as otherwise such errors would be harmless". (citing cases) Appellant has made no showing that the above-quoted evidentiary statement is harmful to him and we fail to ascertain that any harm in such exists. It was unquestionably inserted to support an ultimate fact and may properly be regarded as surplusage. *Indpls. & So. Motor Exp., Inc.,* v. *Pub. Serv. Comm.* (1953), 232 Ind. 377, 383, 112 N. E. 2d 864.

Further, we are cognizant of Supreme Court Rule 2-30, adopted since *Miller, etc* v. *Ortman, etc., et al., supra,* which lessens the potency of a defect in the findings of facts. This rule states:

"When special findings of fact are made in an action tried by the court without a jury and the court fails to find on some material issue of fact, on appeal from the judgment the reviewing Court may either affirm the judgment if it is supported

by undisputed evidence, or vacate the judgment and remand the action for findings on the material issues of fact."

The trial court has found on all the material issues and we deem the one evidentiary finding harmless. Therefore, we hold that no prejudicial error exists in the findings of fact.

We are now to the crux of this case which concerns the issue of equitable estoppel. Appellant first urges that the trial court erred in not sustaining its demurrer to paragraph III of appellees' answer which is the paragraph in equitable estoppel. The answer alleged, among other elements, that Taelman, appellant's general manager, *orally* represented to appellees that Powell was honest and reliable, thereby inducing appellees to hire Powell. The demurrer to this answer was based solely on the ground, as the argument here on this appeal is based, that these statements could not constitute a proper defense because they were not in writing. As authority for this argument, appellant cites 1 R.S. 1852, ch. 42, §6, p. 299, being Burns' 1949 Replacement, Vol. 7, part I, §33-103 which reads as follows:

> "*No action shall be maintained* to charge any person by reason of any representation made concerning the character, conduct, credit ability, trade or dealings of any other person, unless such representation be made in writing and signed by the party to be charged thereby, or by some person thereunto by him legally authorized." (our emphasis)

Probably the landmark case in Indiana concerning this part of the statute of frauds is *Cook et al.* v. *Churchman et al.* (1885), 104 Ind. 141, 3 N. E. 759. In a thorough analysis of the statute, historically and otherwise, the Supreme Court of Indiana states on p. 147-148 that this act (then commonly known as Lord

Tenterden's act) was enacted to supply a defect found to exist in the statute of frauds. The court explains that in *Pasley* v. *Freeman*, 3 T.R. 51, there was illustrated a mode of evading that part of the statute which is found in Burns' §33-101 which states that no action shall be brought to charge any person upon a special promise to answer for the debt, default or miscarriage of another unless such is in writing. This possible evasion, so said the court in *Cook et al.* v. *Churchman et al, supra,* at p. 148, could be accomplished " . . . by shaping the action so as to make it count upon a tort or wrong by some false or fraudulent representation to the defendant, in order to induce him to contract with another, instead of upon a special promise." Thereby, that particular section of the statute §33-101, *supra,* could be avoided. The court further concludes in *Cook, supra,* that the intent of the statute was to put such representations (as found in Burns' §33-103) "upon the same basis as special promises to answer for the debt of another." Thus, we have an extension or supplement to the statute of frauds in §33-103, *supra.* In fact, it is part of such statue as it is commonly referred to. As the title would indicate, the object of the statute is to prevent frauds and perjuries. Further, §33-101, *supra,* states that "no action shall be *brought*" and §33-103 similarly states that "no action shall be *maintained*" upon certain representations unless such are in writing. Thus, a simple reading of the statute, plus the historical reason for its enactment indicates that the purpose of the statute is to prevent a party from *bringing an action* to charge the defendant with oral representations because to allow such an action would leave the door wide open to fraud through the simple expediency of self serving oral declarations not supported by a writing. Thus, we immediately notice from the words and

intendment of the statute that such law is directed against a remedy or suit where the *moving party* attempts to derive an advantage from the oral representations of another. This differs from the case at bar where the appellees-defendants are attempting to interpose the . *defense* of estoppel alleging that the oral representations of the appellant-plaintiff· should prevent the latter's action from prevailing. The Bezeks are not attempting to *profit* from Taelman's representations. Therefore, it is immediately apparent that the statute of frauds, more particularly §33-103, *supra*, should not prevent an answer in equitable estoppel from being interposed as a defense in mechanic's lien cases against a mechanic lienholder. This conclusion is fully sustained by the case law in Indiana. This court recognized, in *Johnson* v. *Spencer* (1912), 49 Ind. App. 166, 169, 96 N. E. 1041, the rule that:

> "The right to a (mechanic's) lien may be waived or *the party asserting it may be estopped to enforce it.*" (Our emphasis) Also see *Ward* v. *Yarnelle* (1910), 173 Ind. 535, 91 N. E. 7 and *Midland Building Industries* v. *Oldenkamp* (1952), 122 Ind. App. 347, 103 N. E. 2d 451.

On the question of the nature of the act which may constitute an act of estoppel (providing all of the elements are present), we find that such action may be accomplished in various manners. As stated by this court in *Johnson* v. *Western, etc., Mining Co.* (1923), 81 Ind. App. 79, 81-82, 140 N. E. 559:

> "The principle of equitable estoppel rests upon the foundation of justice and fair dealing, and arises from the conduct of a party, using the word 'conduct' in its broadest meaning as including *his spoken words,* his positive acts and his silence when there is a duty to speak. By reason of this principle, a person is concluded *not only by*

*what he does or says,* but by the reasonable inferences from his conduct." (our emphasis)

So we see that the conduct constituting equitable estoppel may not only result from words, but ■ also by acts and even "silence when there is a duty to speak".

The conclusion as to whether the statute of frauds (§33-103, *supra*) prevents the assertion of the defense of equitable estoppel in the case at bar because ■ such conduct is oral is inevitable. Because the purpose of the statute is to bar the remedy and not a defense; because the defense of equitable estoppel is allowable in mechanic's lien cases; and because the conduct constituting estoppel may be by words; the fact that appellant's manager Taelman's conduct was oral does not prevent such conduct from constituting a basis for the interposition of the defense of equitable estoppel.* The trial court was therefore not in error in overruling appellant's demurrer to appellees' third paragraph of answer.

Appellant next urges that appellees did not sustain their burden of proving that appellant's general manager Taelman was the agent of appellant, so as to bind appellant by his representations. As part of this argument, it is asserted that Bezeks are bound by the testimony of a certain witness who testified as to Taelman's capacity. Appellees' attorney called to the stand an appellant's officer, one R. Loran Barr. Barr generally testified that Taelman was not authorized by appellant to make any representations concerning em-

---

*Further authority for this holding can be found by reading the following cases. While they do not hold specifically on this question, these decisions consider oral conduct or acts as possible acts of estoppel. *Midland Building Industries* v. *Oldenkamp, supra; Johnson* v. *Spencer, supra; Acker et al.* v. *Massman* (1895), 12 Ind. App. 696, 41 N. E. 77.

ployment of contractors, more particularly, Powell. Appellant claims that this testimony necessarily binds appellees, and that such testimony concerning Taelman's lack of agency necessitates only one conclusion, i.e., that Taelman had no authority to act as he did. As partial authority for this conclusion, there is cited Acts 1881 (Spec. Sess.), ch. 38, §285, p. 240, being Burns' §2-1726, which is as follows:

"PARTY PRODUCING NOT TO IMPEACH. EXCEPTION. The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; *but he may, in all cases, contradict him by other evidence,* and by showing that he has made statements different from his present testimony." (our emphasis)

This statute obviously does not stand for the proposition that a party is necessarily bound by the testimony of one witness produced by him, simply because the circumstances may not allow impeachment, or the party producing the witness does not take advantage of the exception in the statute by impeaching the witness. Note that the statute states that the appellant may ". . . in all cases, contradict him by other evidence . . . ". In the first place, the trier of the facts may not believe the witness as was the situation of the case at bar. On this latter point, it is enlightening to quote the trial court's comments on Barr's testimony:

"This court has seldom observed a witness who was more evasive, calculating, cagy (sic) and obviously prejudiced in his demeanor and response than this witness. Little credence can be placed in his testimony where the interest of his company is at stake. His statement that Taelman was without authority is a conclusion of law he seeks to

have the court accept. He does not testify that Taelman was not cloathed (sic) with apparent authority to do the things he did."

Thus, the trial judge gave no credence to the testimonial conclusion of Barr that Taelman was not empowered to act as he did. The trial judge's comments on the demeanor of the witness points up a very good reason why we, as an appellate tribunal, cannot decide otherwise. That is, we cannot accept Barr's testimony solely, as appellant would have us do, and reach a conclusion contrary to that of the trial court. *Gramar Investment Co.* v. *Cumberworth* (1950), 120 Ind. App. 379, 382, 92 N. E. 2d 736. As a further basis for our decision on this point, there is evidence in the record indicating that there at least existed the apparent authority of Taelman to make representations concerning contractors; i.e., Taelman was general manager of the corporation and the arrangement with Powell and the practices surrounding such arrangement were in existence for several years. This plus other evidence in the record infers that Taelman's authority could have been that of recommending Powell to Bezeks. This other evidence would also negate an absolute verity to Barr's testimony, preventing a conclusion that only one inference can be drawn simply because of Barr's discredited words on the witness stand. See *Devine* v. *Grace Construction & Supply Co.* (1962), 243 Ind. 98, 105, 181 N. E. 2d 862. Appellant also claims that Taelman was a "special agent", and the rules pertaining to this relationship are necessarily present as defined in *Farm Bureau Mutual Insurance Company* v. *Coffin* (1962), 136 Ind. App. 12, 186 N. E. 2d 180, 182-183, as follows:

"A special agent is one who is authorized to do one or more specific acts, in pursuance of particular

instructions or within restrictions neces-
sarily implied from the act to be done. The
principal is not bound by the acts of a spe-
cial agent, if he exceeds the limits of his authority.
And it is the duty of every person who deals with
a special agent to ascertain the extent of the agent's
authority before dealing with him." (citing *Cruzen*
v. *Smith et al.*, (1872), 41 Ind. 288, 297.)

These are general rules pertaining to the relationship
of special agency which we readily recognize. Further,
as stated in *Farm Bureau Mutual Insurance Company*
v. *Coffin, supra,* at p. 183, the question of whether a
party is a general or special agent is a question of
fact and all of the acts and dealings of the agent
must be considered. As to these acts, we notice that
Taelman was the *general manager* of the appellant
lumber company and he had evidently suggested Powell
pursuant to their arrangement for several previous
years with appellant's ratification. Also, appellant ac-
cepted the monetary benefits of its agent's representa-
tions and it cannot afterwards deny such power to act.
*Hockett* v. *Jones et al., Executors* (1880), 70 Ind. 227,
231. The trial court found that Taelman possessed
apparent authority to suggest Powell as a general
contractor. We do not believe that this is an erroneous
conclusion considering the evidence concerning Tael-
man's position and his previous representations and
those to the Bezeks, which were ratified by appellant.
With this conclusion, the rule found in *Farm Bureau
Mutual Insurance Company* v. *Coffin, supra,* at p. 183,
is controlling:

"When one has the appearance of a general
agent the law is clear that a third person dealing
with him is not bound to inquire into his
specific authority, nor is the principal pro-
tected by secret limitations upon the author-
ity of such an agent. The reason for the rule is
that where one of two innocent persons must suf-

fer because of the betrayal of a trust reposed in a third, the one who is most at fault should bear the loss. Since the principal put the agent in the position of trust, he is the one who should suffer the detriment." (citing cases)

Taelman's representations therefore bound appellant and Bezeks were not required to inquire into his specific authority.

Having found that Taelman's representations concerning Powell were binding upon appellant, we now have one question to consider. This is whether the record is devoid of any evidence of probative value to sustain the trial court's conclusion that equitable estoppel existed through Taelman's representations. The elements that must exist to constitute equitable estoppel are found in *Midland Building Industries* v. *Oldenkamp, supra,* at p. 352, quoting from 31 C.J.S., Estoppel, §67, p. 254:

"In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice." Also see *Richardson* v. *St. Mary's Hospital, Inc.* (1963), 135 Ind. App. 1, 191 N. E. 2d 337, 340.

Appellant asserts that the Bezeks necessarily had the means to ascertain whether Powell was "honest, reliable and dependable". Appellant has not pointed to any indisputable evidence, or otherwise shown, how appellees could have ascertained otherwise than from Taelman's representations. There is an at-

tempt by appellant to indicate that there existed a possible means of ascertaining Powell's reliability that Bezeks could have utilized. This is the fact that after the mechanic's lien was filed, Mr. Bezek obtained a Dun & Bradstreet rating on Powell. It stated that "Mr. Powell was slow but *dependable,* and that he had a twenty-five thousand dollar credit, outstanding credit, with Voorhees-Jontz at all times." (our emphasis) We fail to ascertain how the Bezeks could have determined that Powell was not dependable had they inquired of Dun & Bradstreet before the contract was executed. On the other hand, the Dun & Bradstreet rating is positive evidence that there did not exist means of knowledge of the real facts.

Finally, appellant urges that nowhere in its findings of fact did the trial court determine that the representations of Taelman concerning Powell were false and known to be false by Taelman. In answer to this assertion, we quote the trial court's finding No. 16:

"16. At the time of Taelman's representation to the Bezeks the defendant Powell was delinquent in his account with the plaintiff, a fact known to plaintiff and to the manager Taelman." (approximately $32,000)

Appellant does not seriously contend that the remaining elements of equitable estoppel are not present. We therefore conclude that each necessary element of equitable estoppel is present in the case at bar.

In conclusion, we believe that our decision herein conforms to the general purpose of the mechanic's lien statute. The statutory lien is equitable in nature (*Ward* v. *Yarnelle, supra*) and is based upon a theory of unjust enrichment. As so aptly

stated in *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc.,*
*R. Co.* (1913), 179 Ind. 356, 372, 101 N. E. 296:

> "The mechanics' lien laws of America, in general, reveal the underlying motive of justice in dedicating, primarily, buildings and the land on which they are erected, to the payment of the labor and materials incorporated, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and materials furnished by others, without recompense."

When a materialman actively encourages the general contractor to misapply the moneys paid by the owner; and when the materialman suggests to the owner that a general contractor is reliable and dependable when he knows in fact that such contractor is delinquent in satisfying his obligations to such materialman, the latter cannot in justice and good conscience prevail under his purported lien against such owner. With these facts present in the case at bar, it is obvious that the Bezeks were not unjustly enriched at the materialman's expense given the intendment of the mechanic's lien statute.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Bierly, C.J. and Smith, J., concur; Mote, J., concurs in result.

NOTE.—Reported in 209 N. E. 2d 380.