Mike L. BACA, Richard J. Wise, and Peter Nims, individually and as members of the Industrial Commission of the State of Colorado; The Industrial Commission of the State of Colorado; Charles McGrath, Director, Division of Labor; C & H Transportation Co., Inc.; and Vigilant Insurance Company, Petitioners,

v.

Sammie E. HELM, Respondent.

C & H TRANSPORTATION CO., INC. and Vigilant Insurance Company; The Industrial Commission of the State of Colorado; Mike L. Baca, Richard J. Wise, and Peter Nims, individually and as members of the Industrial Commission of the State of Colorado; and Charles McGrath, Director, Division of Labor, Petitioners,

v.

Sammie E. HELM, Respondent.

Nos. 83SC242, 83SC245.

Supreme Court of Colorado,
En Banc.

May 29, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Timothy Arnold, First Asst. Atty. Gen., William Levis, Kathryn J. Aragon, Asst. Attys. Gen., Denver, for Industrial Com'n of the State of Colorado.

Robert A. Weinberger, Knapp & Lee, P.C., Denver, for C & H Transp. Co., Inc. and Vigilant Ins. Co.

Peter Watson, Christina M. Habas, Watson, Nathan & Bremer, P.C., Denver, for respondent Helm.

DUBOFSKY, Justice.

We granted certiorari to review an unpublished decision of the Court of Appeals which reversed the decision of the Industri-

al Commission (commission) and remanded this worker's compensation case for affirmation of the referee's findings. The Court of Appeals ruled that the commission used an incorrect standard of review to set aside the referee's finding that the claimant's work-related injury caused his disability. We vacate the Court of Appeals judgment and remand the case, directing that it be returned to the referee for further findings.

On December 11, 1978, Sammie E. Helm, the claimant, fell against a machine at his work-place, injuring his head and right shoulder. The claimant remained absent from work for several days afterwards because of flu-like symptoms. On December 18, 1978, complaining of stiffness in his shoulder, the claimant consulted Dr. Koller, his family physician, who tentatively diagnosed the claimant as suffering from biceps tendonitis and prescribed treatment appropriate to that condition. When the claimant's condition failed to improve, Dr. Koller referred him to Dr. Maruyama, who examined the claimant on December 21, 1978, and diagnosed a contusion-strain of the right shoulder. Dr. Maruyama immobilized the claimant's shoulder in a sling and told him to perform some gentle exercises and return in two weeks for another examination. Upon the claimant's return on January 4, 1979, X-rays revealed that he was suffering from septic arthritis of the shoulder joint. Because of his toxic condition, the claimant was hospitalized immediately, and Dr. Stedman drained and irrigated two large abscesses in the area of the claimant's shoulder. The claimant remained hospitalized for ten days. Since the operation, the claimant is unable to move his right shoulder joint and motion of the right elbow is somewhat impaired. On July 2, 1979, the claimant returned to work, but he stopped working on December 10, 1979 because of the pain in his shoulder and arm.

Dr. Stedman reported that the claimant's septic arthritis was caused by transient septicemia and that when the claimant injured his shoulder, the shoulder joint became more susceptible to infection. According to Dr. Stedman's report, the septic arthritis would have been very difficult to diagnose at the time of the injury because there was no reason to believe that an infection was present. Other medical reports in the record state that the claimant's injury masked the presence of the infection, making early diagnosis difficult, and that the claimant's disability was due to the injury and infection. One report indicates that the injury had little, if any, bearing on the infection and subsequent complications. According to many of the reports, the claimant's recovery was impeded by his refusal to cooperate fully in managing his diabetes which first was diagnosed in 1970.

After a hearing, the referee, on October 3, 1981, made the following findings:

1. The claimant was injured in a compensable accident on December 11, 1978. . . .

2. The claimant's injury was to his right shoulder.

3. The claimant was initially treated by a Dr. Koller and was subsequently referred to Drs. Maruyama, Stedman and Rowland.

4. Claimant's condition was originally diagnosed as a contusion of the right shoulder.

5. Following this diagnosis the claimant developed an infection in the right shoulder and was subsequently hospitalized for treatment of this infection which hospitalization was paid for by respondents.

6. That claimant was a known diabetic and was diagnosed as being a diabetic by the treating physician Dr. Stedman and Dr. Rowland.

7. That the claimant's injuries superimposed upon his diabetic condition has caused a complete loss of the use of his right arm at the shoulder.

8. That because of the loss of his right arm at the shoulder the claimant is completely unemployable and is therefore permanently and totally disabled. . . .

The referee ordered C & H Transportation Co., Inc. (the employer) and Vigilant

Insurance Co. (the carrier) to pay the claimant temporary and permanent total disability benefits. The employer and the carrier petitioned the commission for review. The commission, on August 30, 1982, set aside the seventh finding of the referee—that of causation—stating: "no doctor says that the shoulder infection or the septic arthritis were caused or aggravated by the injury on the job." The commission labeled the referee's finding of causation an "ultimate finding" and held that "the weight of the evidence establishes only that the shoulder injury caused only a 10% impairment of the arm at the shoulder. The referee erred in attributing the entirety of the impairment and resulting permanent total disability to the injury."[1]

The claimant appealed, and the Court of Appeals reversed the commission's decision, remanding the case for affirmation of the referee's ruling. The court held that the referee's finding of causation was one of evidentiary fact and that such findings are binding on the commission unless they lack substantial support in the record. Consequently, the court determined that the commission erred in setting aside the referee's finding. The commission, employer, and carrier sought certiorari review by this court. We granted certiorari to determine whether the commission applied the proper standard of review in setting aside the referee's finding of causation.

## I.

The standard of review at issue is set out in Ch. 86, sec. 2, § 8–53–106(2), 1981 Colo. Sess.Laws 476, 476–477 (the 1981 amendment), which provides:

**8–53–106. Review—petition—notice—clerical mistakes.** (2)(a) The commission, upon referral of a case to it by the director or upon a petition being filed with it to review the director's or a referee's supplemental award, shall review the entire record transmitted by the director in said case and shall enter its award thereon....

(b) The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the director or referee shall not be set aside by the commission on review of the director's or referee's decision unless the findings of evidentiary fact are contrary to the weight of the evidence. The commission may remand the case to the director or referee for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law.[2]

Prior to the 1981 amendment to section 8–53–106(2), 3 C.R.S. (1973), the commission had the authority to review the record transmitted by the director *de novo* and make evidentiary findings of fact independent of those of the referee. The 1981 amendment did not abolish all fact-finding authority of the commission, but it prevents the commission from independently making findings of evidentiary facts when the evidentiary facts found by the referee are not contrary to the weight of the evidence. The commission remains free to make independent "ultimate conclusions of fact." The amendment governs all cases decided by the commission after its effective date, May 26, 1981. *Nolan v. Indus-*

---

1. The commission's conclusion is based on a medical report from Dr. Rowland which states: "It is my opinion that the injury had little if any, bearing on [the septic arthritis and complications].... Assuming Mr. Helm had sustained a rotator cuff injury to the right shoulder as a result of his accident, I would have anticipated a permanent disability of 5 to 10%. I assume you understand these last comments are speculative and I am unable to give a precise percentage that should be apportioned to the injury and to the infection and its sequel."

2. The General Assembly, effective July 1, 1983, repealed and reenacted Article 53 of title 8, C.R.S. with amendments. The current standard of review, set out in § 8–53–111(7), 3 C.R.S. (Supp.1983), provides: "The commission may reverse, remand, or affirm any order [entered by the director or hearing officer].... If the findings of evidentiary fact entered by the director or hearing officer are supported by substantial evidence, they shall not be altered by the commission."

*trial Commission*, 664 P.2d 253 (Colo.App. 1982).

The 1981 amendment applies different standards for the commission's review of evidentiary facts and ultimate conclusions of fact.[3] *See R & R Well Service Co. v. Industrial Commission*, 658 P.2d 1389 (Colo.App.1983). This court distinguished evidentiary from ultimate facts in *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982), where we stated:

> Findings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties. An ultimate finding of fact will be set aside by a reviewing court only if, assuming there is evidence to support the finding, it is "contrary to law," ....

*Id.* at 844 (citations omitted). *See also Ricci v. Davis*, 627 P.2d 1111 (Colo.1981); *Blair v. Lovett*, 196 Colo. 118, 582 P.2d 668 (1978). In *Lee*, we held that whether the standard of dental care in Denver includes the retaking of X-rays under certain circumstances is an evidentiary fact; however, whether a violation of that standard of care falls within the statutory category of "gross incompetence" is an ultimate fact.

The parties to the instant case imply in their briefs that the question before us is whether, as a matter of law, causation is an ultimate or evidentiary fact. The claimant asserts, relying on *Savio House v. Dennis*, 665 P.2d 141 (Colo.App.1983), that causation in the context of a worker's compensation claim is an evidentiary fact which is binding on review. The commission, the employer, and the carrier argue that causation is an ultimate fact which is within the commission's discretion on review. The Court of Appeals in this case determined, on the basis of *Savio*, that causation is an evidentiary fact.

■ We do not believe that causation is necessarily an ultimate or an evidentiary factual determination. Under the standard enunciated in *Lee*, causation may in certain circumstances be an ultimate fact and in others an evidentiary fact. Whether an injury "caused" a disability, in the sense that the injury had a particular role in the chain of events leading to the disability, is a question of evidentiary fact, to be determined according to the weight and sufficiency of the evidence. Whether an evidentiary fact of causation justifies the legal conclusion that a disability was "proximately caused"—within the meaning of section 8–52–102(1)(c), 3 C.R.S. (Supp.1983)[4]—by a work-related injury is an ultimate fact, i.e., a question of statutory interpretation.[5]

## II.

The referee's finding in this case, that "the claimant's injuries superimposed upon his diabetic condition has caused a complete loss of the use of his right arm at the shoulder," is ambiguous. It is impossible to tell whether the "injuries" referred to include only the injury directly attributable to the claimant's fall, the injury attributable to his infection, or both. Whether the finding was meant to imply a causal link between the fall and the infection is unclear. If the finding is read as a statement

---

**3.** This ultimate-evidentiary distinction is identical to that in § 24–4–105(15)(b), 10 C.R.S. (1982) of the State Administrative Procedure Act: "The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the hearing officer shall not be set aside by the agency on review of the hearing officer's initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence...."

**4.** Section 8–52–102(1)(c) states: "The right to the compensation provided for in articles 40 to 54 of this title, in lieu of any other liability to any person for any personal injury resulting therefrom, shall obtain in all cases where the following conditions occur: ... (c) Where the injury or death is *proximately caused* by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted." (emphasis added).

**5.** Technically every case involves the ultimate question of proximate causation. As a practical matter, however, the evidentiary findings—if upheld by the commission—will often place the ultimate fact of proximate causation beyond dispute.

that the claimant's work-related injury was the direct cause of his infection and disability, then it is an evidentiary finding which may be set aside by the commission if it is contrary to the weight of the evidence. Alternatively, the referee's finding may be read to assume certain evidentiary facts— that the claimant's work-related injury masked the infection, preventing early diagnosis and treatment; that the injury made the shoulder more susceptible to infection; or both—and to conclude that the injury was the legal cause of the disability. So interpreted, the finding is one of ultimate fact, reviewable as a conclusion of law by the commission and by the appellate courts.[6]

Given the ambiguity of the finding at issue, it is impossible to determine whether the commission applied the correct standard of review. We therefore vacate the judgment of the Court of Appeals and remand this case with directions that it be returned to the commission for remand to the referee for clarification of the existing findings and addition of such findings as may be necessary or appropriate.

Judgment vacated and case remanded.

QUINN, J., specially concurs.

NEIGHBORS, J., specially concurs, and ROVIRA, J., joins in the special concurrence.

QUINN, Justice, specially concurring:

I concur in the court's holding that, because the referee's findings are ambiguous at best, a remand is necessary to clarify or to enter additional findings on causation. In my view, however, the issue of causation in this case raises a question of evidentiary fact only—that is, whether the work-related accident on December 11, 1978, induced or brought about the ensuing disability. A resolution of this issue involves a determination of the actual cause of Helm's disability. Such a determination is evidentiary in character and, in contrast to findings of ultimate fact, does not involve a conclusion of law or a determination of a mixed question of law and fact. *See Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982); *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981).

I recognize that causation is a coat of many colors and in some cases the issue of whether a disability was proximately caused by an injury arising out of and in the course of employment might well involve a conclusion of law or at least a determination of a mixed question of law and fact. *See* § 8–52–102(1)(c). We are not dealing with such an issue here. All that is necessary to warrant a finding of causal connection between the work-related accident and the disability is an evidentiary showing to a reasonable probability that Helm's shoulder disability was precipitated by the accident of December 11, 1978. *See Industrial Commission v. Royal Indemnity Co.*, 124 Colo. 210, 236 P.2d 293 (1951).

A finding by the referee on causation will constitute, in my opinion, a finding of evidentiary fact, as distinguished from an ultimate conclusion of fact, within the meaning of section 8–53–106(2)(b), 1981 Colo.Sess.Laws 476, 476–77. Such a finding may not be set aside by the commission on review unless contrary to the weight of the evidence.

NEIGHBORS, Justice, specially concurring:

I concur in the majority's conclusion that the case be remanded to the referee for the purpose of clarifying the findings and to make additional findings, if necessary or appropriate. However, I disagree with the

**6.** In *Colorado Fuel & Iron Corp. v. Industrial Comm.*, 151 Colo. 18, 379 P.2d 153 (1962), this court held that a work-related injury which aggravates a pre-existing condition is the legal cause of whatever disability results from such aggravation. We have never considered specifically whether an injury which interferes with the prompt diagnosis and treatment of a separate condition, or makes a claimant more susceptible to a subsequent infection, is the legal cause of a resulting disability. *But see Standard Metals Corp. v. Ball*, 172 Colo. 510, 474 P.2d 622 (1970) (upholding a finding of causation where, after a fall on an icy sidewalk, the claimant's leg would not have been fractured but for a weakening of the bone by a prior work-related fracture).

majority's analysis of the issues of evidentiary versus ultimate fact and cause versus proximate cause. In my view, the court should make a determination that causation is either an evidentiary or an ultimate fact. The court's conclusion that "causation may in certain circumstances be an ultimate fact and in others an evidentiary fact," at 477, does little to resolve this troublesome issue and provides claimants, insurance carriers, the bench, and the bar with no meaningful guidance to govern future cases. Moreover, the distinction drawn by the majority between "caused" (evidentiary fact) and "proximately caused" (ultimate fact) is a difference which only serves to add further uncertainty to an already confusing area of the law.

Our decision in *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo. 1982), provides adequate guidelines for determining whether causation is an evidentiary or an ultimate fact. In *Lee*, we defined evidentiary facts as those which "are the detailed factual or historical findings upon which the legal determination of the board rests." *Lee*, 654 P.2d at 843. We stated: "Findings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law, or at least a determination of a mixed question of law and fact, and settle the rights and liabilities of the parties." *Id.* at 844.

Evidentiary facts are those facts which are necessary to a determination of the ultimate facts. Ultimate facts are the conclusions drawn from the evidentiary facts. *Tague v. Coors Porcelain Co.*, 29 Colo. App. 226, 481 P.2d 424 (1971). Evidentiary facts are based on the evidence presented at the hearing. Ultimate facts are conclusions acquired through reflection and reasoning based upon the evidentiary facts and are necessary in order that a determination of the rights of the parties can become a question of law. *See Voorhees-Jontz Lumber Co. v. Bezek*, 137 Ind.App. 382, 209 N.E.2d 380 (1965); *Jacobson v. Trim-Slide, Inc.*, 37 Misc.2d 737, 234 N.Y. S.2d 780 (N.Y.Sup.1962).

In order to recover under section 8–52–102(1)(c), 3 C.R.S. (1973 & 1983 Supp.), a claimant must establish that: (1) the injury or death, (2) was proximately caused, (3) by an injury or occupational disease arising out of and in the course of his employment, and (4) was not intentionally self-inflicted. In applying the principles defining the distinction between evidentiary and ultimate facts to the Act, I am persuaded that the element of causation or "proximately caused" is necessarily an ultimate conclusion of fact. *See Borovich v. Colt Industries*, 492 Pa. 372, 424 A.2d 1237, 1240 (1981) ("appellant properly asserted the vacua in the original findings of the Referee, which would justify an *ultimate finding* that the emphysema was not *causally* connected to the employment under the provisions of section 108(n)." (Emphasis added.)) I view the distinction between the words "cause" and "proximate cause" as being only semantic in nature. Since the claimant's right to recover benefits under the Act is dependent upon a determination that the disability was "proximately caused" by an industrial injury or occupational disease, that conclusion is an ultimate fact. *See Goranson v. Department of Industry*, 94 Wis.2d 537, 289 N.W.2d 270 (1980).

The legislative history outlined in the majority's opinion leads me to believe that the General Assembly sought to achieve two goals by the amendments to section 8–53–106(2), 3 C.R.S. (1973), described in the majority opinion. First, the legislature intended that the commission's authority to reverse referees' findings of evidentiary fact be drastically curtailed. The referee's evidentiary findings may not be set aside by the commission unless they are contrary to the weight of the evidence. Second, the legislature granted the commission the power to make independent ultimate conclusions of fact. Thus, there will be uniform decisions made by the commission concerning issues of causation which arise under similar fact patterns. This legislative purpose is particularly important in claims involving occupational diseases. If causation is limited to the status of an evidentiary fact in any case, then whether similarly situated claimants recover benefits under the Act is wholly dependent upon the referee to whom the case is as-

signed. This result is inconsistent with the purposes of the Act.

I recognize that a referee can make findings of evidentiary facts that would, as a matter of law, dictate the ultimate conclusions of fact which the commission would be required to make. I also recognize that the "either/or" approach which I have advocated is mechanical, lacks flexibility, and may lead to an unfair result in some cases. However, I believe the purposes of the Act and the administration of justice are served far better by adopting a clear and precise rule than by engaging in a case-by-case approach which will involve endless appellate litigation over the elusive concepts of evidentiary facts, ultimate facts, cause, direct cause, legal cause, and proximate cause.

I am authorized to say that Justice ROVIRA joins in the special concurrence.