INDUSTRIAL COMMISSION OF COLORADO; Asarco Industries, Inc.; and State Compensation Insurance Fund, Petitioners,

v.

Lenzie A. JONES, Respondent.

No. 83SC119.

Supreme Court of Colorado,
En Banc.

Sept. 24, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Christa D. Taylor, Kathryn J. Aragon, Asst. Attys. Gen., Denver, for petitioner Indus. Com'n.

Samuel H. Collins, William J. Baum, Denver, for petitioners Asarco Industries, Inc., and State Compensation Ins. Fund.

James A. May, Denver, for respondent.

ROVIRA, Justice.

We granted certiorari to review an unpublished decision of the court of appeals which reversed the decision of the Industrial Commission of Colorado (Commission) and remanded this workman's compensation case for affirmation of the referee's order. The court of appeals ruled that the issues in controversy were questions of evidentiary facts, that findings of evidentiary facts are binding upon the Commission unless they have no substantial support in the record, and that the evidentiary facts found by the referee did have substantial support in the record. We reverse.

## I.

Lenzie A. Jones, the claimant, sustained a low back injury in an accident while working for Asarco, Inc. (Asarco), in November 1975. Subsequently he had an operation for a herniated disc. Although the surgery relieved the pain in his lower back and right leg, Jones could not perform his work. He applied for workmen's compensation benefits, and he was awarded permanent partial disability benefits of six percent as a working unit in June 1977.

After being terminated by Asarco, Jones became a welder and was employed by General Iron Works from 1978 to 1981. In early 1981, he became aware of a change in his physical condition, and a few months later he left his position with General Iron Works. In August 1981, he filed a petition with the Commission in which he sought to reopen his workmen's compensation claim.

The petition to reopen alleged that Jones had been injured in 1975 and that his physical condition has changed "in that it has become worse." The petition was supported by a report of Dr. Steve A. LeVally dated August 11, 1981, which stated:

> Mr. Jones has been seen in our clinic recently for recurrence of long-standing low back pain, having had a lumbar laminectomy in 1977. For the past 2–3 months has had left lumbar pain with occasional radiation to the lateral aspect of the left leg.
>
> Examination shows spasm of the left lumbar muscle group with good muscle tone throughout. The deep tendon reflexes are normal on the right but diminished in the left knee.
>
> He has received some lessening of pain with physical therapy but is still fairly symptomatic. He is also being treated with bed rest, heat and muscle relaxants. He is to be reevaluated in one week.

At the request of the State Compensation Insurance Fund (Fund), the insurance carrier for Asarco, Jones was examined by Dr. Martin Anderson. In his report of October 6, 1981, Dr. Anderson made the following diagnosis:

> DIAGNOSIS: Protruded lumbar intervertebral disc with mild symptoms following surgical treatment 1977.
>
> Strain low back, lifting at work, June, 1981,
>
> Scoliosis, developmental, lumbar spine, mild.
>
> He developed some pain in the lower portion of his back working as a welder in June, 1981. He was examined and treated. His physician recommended that he rest and stay off work. The patient says he wants a release to go back to work but the doctors thought he ought to stay off for a few more weeks. Examination at this time reveals signs of postoperative surgical treatment with a generally satisfactory result. I believe that he could return to his regular job at this time. He was instructed in proper lifting and should avoid lifting objects that weigh more than forty pounds. X-rays reveal a curvature of the lumbar spine which I believe is developmental and can cause some weakening of the bony structure. I do not believe he requires further treatment at the present time. He might benefit from wearing a sacroiliac belt with pad at work. I do not believe there has been any aggravation of his pre-existing disability.

Based on Dr. Anderson's report, the Fund took the position that Jones's physical condition resulted from a new injury and objected to reopening the claim.

In December 1981, Dr. Stevan Goff, the claimant's physician, reported that Jones had been evaluated on numerous occasions for lower back pain since July 1981. He stated that Jones had been examined by a neurologist whose evaluation was inconclusive for recurrent disc disease. He also said that a neurosurgeon who examined Jones felt that Jone's back pain "represented a recurrent lumbar strain without well defined symptoms of a lumbar disc lesion." Dr. Goff anticipated that Jones would periodically suffer from low back pain and recommended that he return to work with light duty for two to three weeks.

At the hearing to reopen held in January 1982, Jones was the only witness. He testified that he first noticed a change in his condition in January 1981 and there had been no on-the-job accidents while working for General Iron Works. He stated that he was unable to do any lifting, stooping, or sitting for a prolonged time and had pain in his back and legs. He also testified that if a job required prolonged sitting or standing he was unable to perform it.

The referee, by order dated February 25, 1982, found that: (1) Jones sustained an injury in 1975; (2) he left work on July 20, 1981, because of discomfort in his low back and right leg and has been under the care of Drs. LeVally and Goff; (3) he had been released by Dr. Goff to return to work with restrictions; (4) his condition has worsened and that the worsening is not related to claimant's employment at General Iron Works, but to his injury in November 1975. As a result of these findings, the referee concluded that the claimant's physical condition "has worsened and that the worsening is related to the claimant's industrial accident of November 20, 1975" and "the claimant continues to be symptomatic in his low back and right leg and has been totally disabled since July 20, 1981." The petition to reopen was granted and temporary total disability benefits were ordered to be paid to Jones from July 20, 1981, as well as necessary medical, surgical, and hospital expenses, not to exceed $20,000.

The Fund and Asarco petitioned for review. The Commission, after reviewing the entire record, determined that "[t]he evidence is not sufficient to show a worsening of [Jones's] condition following his recovery [from] surgery in 1977, or to show by a preponderance of evidence that the

cause of his current symptoms was from the 1975 injury with its 1977 surgical treatment." The Commission also stated that none of the three expert opinions "says that the claimant's condition at the time of the petition to reopen was worse and was related to his prior compensable injury; and one of them opined that there was not any aggravation thereof." The Commission reversed the referee's decision, holding that Jones had failed to sustain his burden of showing by a preponderance of the evidence a change in condition pursuant to section 8–53–119, 3 C.R.S. (1973).

In his petition for review, Jones claimed that the Commission's order was contrary to the law and the evidence, and that the Commission erred in making findings of evidentiary facts in conflict with the facts found by the referee. He argued that the evidence clearly reflects a worsening of the claimant's condition and that Ch. 86, sec. 2, § 8–53–106(2)(b), 1981 Colo. Sess. Laws 476 [1] prohibited the Commission from modifying "the findings of fact in any way, but may only modify the Order if it is not in accordance with the findings of fact made by the Division of Labor Hearing Officer."

The Commission rejected claimant's argument. It reaffirmed its initial determination that the referee's order was contrary to the weight of the evidence. It then concluded that section 8–53–106(2)(b) preserves the Commission's authority to find or to set aside ultimate conclusions of fact and "even in findings of evidentiary fact, the Commission has authority to act to find the facts correctly if the findings of evidentiary fact by the referee are contrary to the weight of the evidence."

---

1. § 8–53–106, 3 C.R.S. (1982 Supp.), states in part:

    (2)(a) The commission, upon referral of a case to it by the director or upon a petition being filed with it to review the director's or a referee's supplemental award, shall review the entire record transmitted by the director in said case and shall enter its award thereon. . . .

    (b) The findings of evidentiary fact, as distinguished from ultimate conclusions of fact,

made by the director or referee shall not be set aside by the commission on review of the director's or referee's decision unless the findings of evidentiary fact are contrary to the weight of the evidence. The commission may remand the case to the director or referee for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction of relief entered therein, in conformity with the facts and the law.

The claimant appealed and the court of appeals set aside the Commission's order and remanded the case for affirmation of the referee's ruling. The court first found that both treating physicians, Drs. LeVally and Goff, connected Jones's 1981 symptoms to his 1977 surgery. It then held that the referee's findings that Jones's condition had worsened and the worsening was attributable to his 1975 work-related injury were findings of evidentiary facts, and such findings are binding upon the Commission unless they have no substantial support in the record. It then concluded that, given the substantial evidence supporting the referee's determinations, it was error for the Commission to set these findings aside.

The Commission, Asarco, and the Fund sought certiorari review by this court. We granted certiorari to determine whether the Commission applied the proper standard of review in setting aside the referee's finding and reversing his decision to allow Jones to reopen his claim.

## II.

The Commission's standard of review over a referee's findings is controlled by section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.).[2] In *Baca v. Helm*, 682 P.2d 474 (Colo.1984), we reviewed this statute.

■ In *Baca* the question was whether causation is an ultimate or an evidentiary fact. In the present case, the question is whether the Commission applied the proper standard of review in setting aside the referee's findings and reversing his decision. Ordinarily it is necessary to determine whether findings are of evidentiary or ultimate facts in order to determine what the proper standard of review is. If the findings are of ultimate facts, the Commission is free to make an independent conclusion. *Baca*, 682 P.2d at 476; *R&R*

*Well Service Co. v. Industrial Commission*, 658 P.2d 1389, 1391 (Colo.App.1983). The Commission may only set aside findings of evidentiary facts, however, if the findings are contrary to the weight of the evidence. Section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.); *Baca*, 682 P.2d at 476. If the referee's findings that the claimant's condition had worsened and that the worsening was attributable to his 1975 injury were findings of ultimate facts, then the Commission had the power to set aside the referee's decision since it is empowered to make independent conclusions regarding ultimate facts. If the referee's findings were of evidentiary facts, however, then the Commission had the power to set aside the referee's decision only if the findings were contrary to the weight of the evidence. In the present case, it is unnecessary to determine whether the referee's findings were of ultimate or evidentiary facts since even assuming, *arguendo*, that the findings were of evidentiary facts, we agree with the Commission that the referee's findings were contrary to the weight of the evidence.

■ "The statutory phrase 'contrary to the weight of the evidence' ... means unless the findings are not supported by a preponderance of the evidence." *Fort Logan Mental Health Center v. Industrial Commission*, 665 P.2d 139, 140 (Colo.App. 1983) *rev'd on other grounds*, *Industrial Commission v. Fort Logan*, 682 P.2d 1185 (Colo.1984). The preponderance standard is met when "the existence of a contested fact is 'more probable than its nonexistence.'" *People v. Taylor*, 618 P.2d 1127, 1135 (Colo.1980).

Here, the evidence concerning the cause of Jones's 1981 discomfort was not in conflict. Jones's physicians never stated that his 1975 injury was the cause of his 1981 complaints, and Dr. Anderson concluded that Jones's back pains did not arise from

**2.** The General Assembly, effective July 1, 1983, repealed and reenacted Article 53 of title 8, C.R.S., with amendments. The standard of review after July 1, 1983, set out in § 8–53–111(7), 3 C.R.S. (1983 Supp.), provides: "The commission may reverse, remand, or affirm any order [entered by the director or hearing officer].... If the findings of evidentiary fact entered by the director or hearing officer are supported by substantial evidence, they shall not be altered by the commission."

an aggravation of his preexisting disability. Thus, even assuming the Commission's standard of review was the more narrow standard of reviewing evidentiary facts as opposed to the standard of reviewing ultimate facts, we believe the Commission acted within its power. Our review of the record supports the Commission's order that Jones failed to sustain his burden of showing by a preponderance of the evidence that the cause of his current symptoms was the 1975 injury. Having exercised its authority in conformity with the statutory mandate, the Commission's order reversing the referee should not have been set aside by the court of appeals.

Accordingly, we reverse the judgment of the Colorado Court of Appeals.

QUINN, J., dissents, and KIRSHBAUM, J., joins in the dissent.

NEIGHBORS, J., specially concurs in part and dissents in part and joins in Part III of Justice QUINN's dissent.

QUINN, Justice, dissenting:

I dissent. My review of the record leads me to conclude that the referee's findings on the claimant's worsened condition were not contrary to the weight of the evidence and that the commission erred in reversing these findings and in dismissing the claimant's petition to reopen. I would therefore affirm the judgment of the court of appeals.

I.

A review of the evidence and procedural history of this case will place in focus the issue before us. The claimant, Lenzie A. Jones, sustained an industrial accident on November 20, 1975, while employed by Asarco, Inc. The pain and disability associated with this accident required a lumbar laminectomy in 1977, and the claimant was awarded permanent partial disability benefits of six percent in June 1977. Upon recovering from surgery the claimant experienced a relief in his symptoms and was able to return to employment. He entered a trade school and worked as a welder for General Iron Works from 1978 to 1981.

On August 14, 1981, the claimant filed a petition to reopen his compensation claim due to a worsening of his physical condition. The claimant, who was the only witness testifying before the referee, denied sustaining any industrial accident while employed at General Iron Works. He testified that he was basically asymptomatic until January 1981, when he began to experience pain in his back and legs. These symptoms became so severe that he was unable to engage in such routine physical activities as standing or sitting for any length of time, washing a car, or riding a bicycle. He had to sleep on the floor to relieve his pain, and due to his worsened condition he left employment with General Iron Works on July 20, 1981.

A report of Dr. Steve A. Levalley, dated August 11, 1981, was considered by the referee. Dr. Levalley stated in his report that the claimant, during the preceding two or three months, had undergone treatment for left lumbar pain with occasional radiation to the lateral aspect of the left leg. Dr. Levalley's examination showed spasm of the left lumbar muscle group and diminished tendon reflexes in the left knee. A report of another treating physician, Dr. Stephen P. Goff, was also considered by the referee. This report indicated that since July 20, 1981, the claimant had been examined on several occasions for lower back pain, and on November 23, 1981, the date of Dr. Goff's last examination, he was still experiencing low back symptoms. It was Dr. Goff's recommendation that the claimant return to work about December 9, 1981, on a light duty basis involving "no lifting over ten to fifteen pounds, no bending or squatting, and preferably a sedentary duty." The other medical report considered by the referee was prepared by Dr. Martin E. Anderson, who examined the claimant on October 6, 1981, at the request of the compensation carrier. It was Dr. Anderson's opinion that, although the claimant was experiencing mild symptoms from the 1977 surgery, there had been no aggravation of any preexisting disability.

It was on the basis of all of the above evidence that the referee found that the claimant's condition had worsened and that the worsened condition was not related to the claimant's employment at the General Iron Works, but to his industrial injury of November 20, 1975. The referee accordingly concluded that the claimant had been totally disabled since July 20, 1981, and granted the petition to reopen, awarding temporary disability benefits and continuing the case on the issue of permanent partial disability. The commission, concluding that the referee's findings were contrary to the weight of the evidence, reversed the referee's decision and dismissed the petitioner's claim to reopen. The court of appeals reversed the commission, holding that the referee's findings were evidentiary in character, were supported by substantial evidence in the record, and were therefore binding on the commission under section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.), ch. 86, sec. 2, 1981 Colo. Sess. Laws, 476–77.[1]

## II.

Section 8–53–119, 3 C.R.S. (1973), authorizes the director of the division of labor, within six years from the date of an accident, to review and reopen a workmen's compensation award for a change in condition. Section 8–53–106(2)(b), 3 C.R.S. (1982 Supp.), which is controlling on these proceedings, states that "[t]he findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the director or referee shall not be set aside by the commission on review of the director's or referee's decision unless the findings of evidentiary fact are contrary to the weight of the evidence."

I agree with the majority's assumption that the findings of the referee with respect to worsened condition are matters of evidentiary fact. Findings of evidentiary fact involve the raw, historical data under-

lying the controversy. *deKoevend v. Board of Education,* 688 P.2d 219, 225 (Colo.1984); *Lee v. State Board of Dental Examiners,* 654 P.2d 839, 844 (Colo.1982); *Ricci v. Davis,* 627 P.2d 1111, 1118 (Colo. 1981); *Blair v. Lovett,* 196 Colo. 118, 124 n. 13, 582 P.2d 668, 672 n. 13 (1976). Findings of ultimate fact, in contrast, involve a conclusion of law or at least a determination of a mixed question of law and fact, requiring as they do the application of legal standards in resolving the rights and liabilities of the parties. *deKoevend,* 688 P.2d at 225; *Lee,* 645 P.2d at 844; *Ricci,* 627 P.2d at 1118; *Blair,* 196 Colo. at 124 n. 13, 582 P.2d at 672 n. 13; *R. & R. Well Service Co. v. Industrial Commission,* 658 P.2d 1389, 1391 (Colo.App.1983). The question whether the claimant suffered a worsening of his physical condition as a result of the industrial injury in 1975 is a question of evidentiary fact because its determination centers solely on the claimant's physical condition on or about July 20, 1981, and the physical or actual cause of that condition. Resolution of this question does not require a normative judgment based on statutory or jurisprudential policy considerations, such as those relating to proximate and intervening cause. *See Baca v. Helm,* 682 P.2d 474 (Colo.1984). The only issue properly before us, therefore, is whether the referee's findings with respect to the claimant's worsened condition were "contrary to the weight of the evidence" within the meaning of section 8–53–106(2)(b).

## III.

The term "contrary to the weight of the evidence" is a broad and general term that proves difficult of application. *See generally Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *Lind v. Schenley Industries, Inc.,* 278 F.2d 79 (3d Cir.1960), *cert. denied* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). It is clear that the term contemplates a different standard of review from the traditional

---

**1.** Article 53 of the Workmen's Compensation Act was repealed and reenacted in 1983. §§ 8–53–101–129, 3 C.R.S. (1983 Supp.). Citations in this dissent are to the statutory provi-

sions which were in effect during the proceedings relating to the claimant's petition to reopen.

standard for a directed verdict, which requires a court to view the evidence in the light most favorable to the party against whom the motion is made, disregard all conflicting evidence, and give that party the benefit of all reasonable inferences from the evidence so considered. *E.g., Lind,* 278 F.2d 79. The term "contrary to the weight of the evidence," in my view, should be interpreted in light of the broad factfinding authority granted by the General Assembly to referees in workmen's compensation cases.

Section 8–53–106(2)(b) is predicated on the assumption that the referee is in the best position to resolve factual issues. This assumption is a reasonable one because these factual issues often require an assessment of credibility. In an analogous context, it has been stated that a trial judge, in determining whether a motion for a new trial should be granted as "contrary to the weight of the evidence," should focus on whether there has been a miscarriage of justice; and unless so satisfied, the judge should let the verdict stand. *See, e.g., Fireman's Fund Ins. Co. v. Aalco Wrecking Co.,* 466 F.2d 179 (8th Cir.1972), *cert. denied* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973); *Lind,* 278 F.2d 79; *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941); *Morgan v. Bucks Associates,* 428 F.Supp. 546 (E.D.Pa. 1977); *see* 6A J. Moore, *Moore's Federal Practice* § 59.08[5] at 59–140–154.

I would apply this same "miscarriage of justice" standard in determining the commission's authority to reverse a referee's factual findings under section 8–53–106(2)(b). The commission should not be permitted to reverse factual findings merely because it might have accorded lesser or greater weight to the evidence and have reached a different result. The commission's power to reverse factual findings as "contrary to the weight of the evidence" should be confined to those situations where the commission concludes that, despite the abstract sufficiency of the evidence to sustain the findings, the evidence so preponderates against the findings that a serious miscarriage of justice will occur if the findings are not reversed.

IV.

Viewing this case in light of the above standard, I conclude that the referee's findings were not contrary to the weight of the evidence. A claimant in a workmen's compensation case has the burden of proving his entitlement to benefits by a preponderance of evidence. *E.g., Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983). A preponderance of evidence means that evidence which is the most convincing and satisfying in the controversy, regardless of which party may have produced it. *See Swaim v. Swanson,* 118 Colo. 509, 197 P.2d 624 (1948); CJI-Civ. 2d 3.1. All that is necessary to sustain a referee's decision to grant a petition to reopen under section 8–53–119, 3 C.R.S. (1973), is evidence showing to a reasonable probability that the claimant's worsened condition resulted from or was precipitated by an industrial accident. *Public Service Co. v. Industrial Commission,* 189 Colo. 153, 538 P.2d 430 (1975); *Industrial Commission v. Royal Indemnity Co.,* 124 Colo. 210, 236 P.2d 293 (1951). There is no requirement that a claimant's burden on causal connection must be established by medical evidence. *E.g., Industrial Commission v. Havens,* 136 Colo. 111, 314 P.2d 698 (1957); *Industrial Commission v. Wetz,* 100 Colo. 161, 66 P.2d 812 (1937). Thus, in resolving the issue of causation, the referee was entitled to consider all the evidence, both direct and circumstantial, including the claimant's testimony, and draw reasonable inferences from this evidence. *E.g., Havens,* 136 Colo. at 120, 314 P.2d at 703; *Industrial Commission v. CF&I,* 135 Colo. 307, 312, 310 P.2d 717, 720 (1957).

To be sure, the factual issues underlying the claimant's petition to reopen are close, and the referee could have resolved these matters either way. The mere fact that the referee could have reached a contrary conclusion, however, is no reason to conclude that the referee's findings were contrary to the weight of the evidence. Although the medical reports were somewhat ambivalent, the claimant's testimony provided a rational foundation for the inference that his physical condition had sub-

stantially deteriorated in 1981 and that his worsened condition was causally related to his industrial injury on November 20, 1975. I see no miscarriage of justice resulting from the referee's factual finding on such closely disputed questions. On the contrary, considering the beneficent purpose of workmen's compensation legislation in allaying "the adverse economic effects upon a workman which flow from a *disabling* industrial accident," *City of Boulder v. Payne*, 162 Colo. 345, 350, 426 P.2d 194, 197 (1967) (emphasis in original), any miscarriage of justice in this case is more likely to result from the commission's dismissal of the claimant's petition to reopen than from the factual findings of the referee. I would affirm the judgment.

I am authorized to say that Justice KIRSHBAUM joins me in this dissent.

NEIGHBORS, J., joins in part III of the dissent.

NEIGHBORS, Justice, specially concurring and dissenting:

I concur in the court's conclusion that the judgment of the court of appeals should be reversed. However, I would reach this result on a different basis. In addition, I dissent to section II of the majority's opinion adopting the "preponderance of the evidence" standard to be used in determining whether the referee's findings were contrary to the weight of the evidence. On this issue, I join section III of Justice Quinn's dissenting opinion.

### I.

In *Baca v. Helm*, 682 P.2d 474, 478 (Colo. 1984) (Neighbors, J., concurring), I wrote a specially concurring opinion expressing my view that causation is an ultimate conclusion of fact. I believe that the inquiry into whether there has been a "change in condition" in a worker's compensation claimant within the meaning of section 8–5–119, 3 C.R.S. (1973), is indistinguishable from the initial inquiry into causation. The majority states:

> If the referee's findings that the claimant's condition had worsened and that the worsening was attributable to his

1975 injury were findings of ultimate facts, then the Commission had the power to set aside the referee's decision since it is empowered to make independent conclusions regarding ultimate facts.

At 1119. In my opinion, this is not a hypothetical statement, but a correct summary of the facts and legal principles applicable to this appeal. Therefore, I would reverse the court of appeals' holding for the reasons I expressed in *Helm*.

### II.

In *Helm*, 682 P.2d at 479, I stated: "[T]he legislature intended that the commission's authority to reverse referees' findings of evidentiary fact be drastically curtailed" based on the legislative history which gave rise to the amendments to section 8–53–106(2), 3 C.R.S. (1973). I believe that the "miscarriage of justice" standard discussed by Justice Quinn in his dissenting opinion more accurately reflects the legislative intent expressed by this history. Indeed, this test is all but compelled by the legislature's intent to limit the power of the commission to reverse the evidentiary findings made by a referee in worker's compensation proceedings.